### Alice M. Kirby

*v.*

### Eli G. Runals *et al.*

*Filed at Ottawa January 18, 1892.*

1. FORECLOSURE—*changing decree for distribution—effect on decree for sale of land—interest of owner of equity of redemption in distribution.* A decree for the foreclosure of a mortgage found the sum due under the mortgage, and directed a sale of the mortgaged premises, and, as between the complainant and one claiming as his pledgee, that the sum due the pledgee should be paid to him. Afterward the receiver of the complainant intervened, and on his motion the order for payment to the pledgee was set aside and the distribution of the purchase money was reserved for future determination: *Held,* that the decree for the sale of the land was not thereby affected, and that the owners of the equity of redemption had no interest in the distribution of purchase money, as between the complainant and the other parties.

2. SAME—*whether decree is final.* A decree foreclosing a mortgage and ordering a sale of the mortgaged premises is a final decree, even though the master is ordered to make a report of the sale, and bring the money into court for the further order of the court as to whom the purchase money shall be paid. Such a decree settles all questions between the holder of the mortgage and the owner of the equity of redemption.

19—140 Ill.

3. SAME—*dismissing suit at subsequent term.* The court has no power, at a subsequent term, to enter an order dismissing the suit, which will have the effect to set aside and vacate a final decree of foreclosure and sale, and a sale may be had notwithstanding such order of dismissal.

4. SAME—*decree and execution for deficiency.* On bill to foreclose a mortgage a decree may be rendered against a defendant personally liable for the debt, if there be personal service, for any balance of money due over and above the proceeds of sale, and an execution may issue for such balance, the same as when the decree is solely for the payment of money; and such decree may be rendered conditionally at the time of foreclosure, or after the sale and ascertainment of the balance due. The case of *Karnes* v. *Harper*, 48 Ill. 527, so holding, is not overruled by the case of *Eames* v. *Germania Turn Verein*, 74 id. 54.

5. FORECLOSURE LIEN—*limitation.* Section 44 of the Chancery act, which provides that a decree for money shall be a lien on the lands of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law, applies only to decrees *in personam,* and not to decrees *in rem.* A decree for the foreclosure of a mortgage, which orders the sale of a particular tract of land and does not award an execution for any deficiency, is not covered by this section, and a failure to make sale of the mortgaged premises within seven years will not discharge the lien as against purchasers of the equity of redemption.

6. SAME—*notice to purchaser of equity of redemption.* A purchaser of the equity of redemption in mortgaged real estate, over seven years after decree of foreclosure, will be chargeable with notice, from the record of the mortgage and of the decree, of the rights of the party under the decree.

7. LIEN—*section 45 of the Chancery act construed.* Section 45 of the Chancery act provides for two liens. The first is in cases where a decree is in respect to the real estate as to which the decree is pronounced. The second is in cases in which a decree is rendered for the performance of an act other than for the payment of money, and where the court declares the decree to be a lien on real and personal property until the decree shall be complied with. The words, "and such lien shall have the same force and effect, and be subject to the same limitations, as judgments at law," refer to the second and not to the first class of liens. The first clause refers to decrees rendered in regard to lands, and declares that they shall be a lien on such lands, but imposes no restrictions upon the lien.

8. CONSTRUCTION OF STATUTES—*law re-enacted.* Where the legislature re-enacts a section of a law, retaining the identical words and phraseology that has been judicially construed, it will be presumed that it used such words and phraseology in the sense that had been placed upon them.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Lorin C. Collins, Judge, presiding.

On May 1, 1888, Alice M. Kirby, the appellant, filed her bill in the Cook circuit court to enjoin appellees from causing the sale, under a decree of foreclosure rendered by said court on March 1, 1876, of certain real estate belonging to her. On the final hearing the temporary injunction was dissolved and the bill dismissed for want of equity. That decree was affirmed in the Appellate Court. This appeal brings the record here.

The record presents, in substance, this state of facts: In 1861 Hart L. Stewart was the owner in fee of the premises described in the bill. He conveyed to Isaac Simmons, who executed and delivered to Eli G. Runals two mortgages thereon, dated September 1, 1864. The mortgages secured two promissory notes of the same date, each payable to the order of Runals, three years after their date. On the 1st day of May, 1875, Runals filed a bill in the circuit court of Cook county to foreclose the mortgages. On the 1st day of March, 1876, a decree was entered finding that the sum of $4680 was due to Runals upon the mortgages, that Emanuel Sandheimer had a lien upon said sum for $4592.28, and decreeing that the defendants, within ten days from the entry of the decree, pay to the clerk of the court the said sum of $4680, with interest thereon at the rate of six per cent per annum from the date of the entry of the decree, with costs of suit, and that in case the defendants should make default the premises be sold by one of the masters in chancery of the court, and that said master bring the money arising from such sale into court, together with his report of the sale, without delay, and that the said Emanuel Sandheimer was entitled to receive out of the said money to be paid to the clerk of the court, or, in default of such payment, out of the proceeds of such sale, the

sum of $4592.28, and that the said Runals was entitled to receive the balance of said sum of $4680, interest and costs that should remain. Before that decree was entered, John H. Roberts had been appointed receiver of Runals' estate by order of the Superior Court of Cook county, in a creditor's suit, wherein one Harding was complainant and Runals was defendant. The receiver, hearing of the decree in Runals' favor, appeared in the foreclosure case, and upon his own motion this order was entered therein by the circuit court on March 18, 1876 :

"It is ordered by the court that the receiver of said complainant, John H. Roberts, having appeared and moved to open this decree and vacate so much of the same as shall be necessary to protect his rights to the moneys declared to be due the said complainant, and payable in fact to one Emanuel Sandheimer, and a contest having arisen between said receiver and said Sandheimer as to the motion of the said Roberts and his claim to the said moneys and the fruits of said decree, and the court desiring to preserve the rights of said receiver and all of the parties in the premises, so that they may be further considered and decided hereafter, it is further ordered by the court that so much of said decree as provides for the payment of any part thereof to said Sandheimer or to said Runals, and the recitals therein contained relating to said claim of said Sandheimer, including those relating to said H. Lowy, be set aside and vacated, and that the determination of the proper party entitled to said moneys be reserved for the further order and decree of this court."

The reference to Lowy was an error, as the decree mentioned him only as having made an affidavit in support of Sandheimer's claim. No further action was taken in the foreclosure suit, or under the decree therein, until April 21, 1880, when an order was entered by the circuit court dismissing the suit. The order of dismissal was never disturbed, nor was any order for re-instating the case ever entered. The suit in

which Roberts was appointed receiver was dismissed in 1882. By quitclaim deed dated September 19, 1887, recorded October 12, 1887, Cecelia Reid, Anna M. McKenna, and Patrick F. McKenna, her husband, and Joseph J. Reid, conveyed the premises to appellant. The grantors in that deed were then the owners of the equity of redemption, all of them except Patrick McKenna having been defendants to the foreclosure suit, and the consideration for the deed was stated therein as $600. By warranty deed dated November 22, 1887, recorded the same day, Joseph J. Reid again conveyed the premises to appellant, the consideration stated therein being $7000. In neither deed was either of the mortgages or the foreclosure proceedings referred to, but at the time the conveyances were made to appellant her attorney had notice thereof from an abstract of title which he examined, and the proof tended to show that at the time of such conveyance the premises were worth over $20,000.

Appellant took actual possession of the premises, and has been in possession thereof ever since the deeds were made to her. All interest of Runals and Sandheimer in and to the decree of foreclosure became vested in W. Beach Taylor, one of the appellees herein, and that fact was so declared by order of the circuit court entered in the foreclosure case March 24, 1888, and the master was thereby directed to proceed with the sale and pay the proceeds thereof to Taylor, after deducting costs of court and expenses of sale. The sale was advertised by the master, but was prevented by the temporary injunction issued on the bill of appellant.

Mr. Matthew P. Brady, for the appellant:

Taylor was not entitled to have a sale of the premises made under the decree of March 1, 1876, because it was not a final decree, and was vacated by the dismissal of the suit, April 21, 1880. *Johnson* v. *Everett,* 9 Paige, 636; *Kane* v. *Whittick,* 8 Wend. 219; *Butler* v. *Lee,* 33 How. Pr. 251; *Railroad Co.*

v. *Loan and Trust Co.* 70 Ill. 249; *Fairfax* v. *Muses' Exrs.* 2 H. & M. 558; *McCall* v. *Peachy*, 1 Cal. 55; *Young* v. *Smith*, 15 Pet. 287; *Barnard* v. *Gibson*, 7 id. 650; *Hawkins* v. *Taber*, 47 Ill. 459; *Coughran* v. *Gutcheus*, 18 id. 391.

The decree ceased to be a lien after seven years. *Karnes* v. *Harper*, 48 Ill. 527; Rev. Stat. chap. 22, sec. 45; *Fox* v. *Reeder*, 28 Ohio St. 181; *Erhman* v. *Kendrick*, 1 Metc. 146; *Ferrier* v. *Busick*, 6 Iowa, 258; *Durand* v. *Lord*, 115 Ill. 610; *Eames* v. *Germania Turn Verein*, 74 id. 54.

Mr. A. S. BRADLEY, for the appellee W. B. Taylor:

The decree of March 1, 1876, was in its nature final, and the modification by the Roberts order left it final as to the defendants and assigns. Puterbaugh's Ch. Pl. 251; Herman on Estoppel, sec. 340; *Graham* v. *Hardin*, 4 Dana, 560; 108 U. S. 24; *Hey* v. *Schooley*, 7 Ohio, 417; *Myers* v. *Manney*, 63 Ill. 212; *Insurance Co.* v. *Auditor*, 100 id. 483.

A decree, though not settling all questions, is final as to those parties whose contentions are disposed of, although the cause may be pending as to other parties with unconnected interests. 2 Daniell's Ch. Pl. 993, 999; *Munger* v. *Jacobson*, 99 Ill. 352; *Derrick* v. *Insurance Co.* 74 id. 405; *Bozarth* v. *Landers*, 113 id. 184; *Mulvey* v. *Gibbons*, 87 id. 369; *Land Co.* v. *Peck*, 112 id. 437; Freeman on Judgments, sec. 248; 2 Jones on Mortgages, (3d ed.) sec. 1601; *Pensoneau* v. *Heinrich*, 54 Ill. 271.

After a final decree has been made, a bill can not be dismissed for want of prosecution. Daniell's Ch. Pl. 811.

The decree of foreclosure and sale was in full force and effect as against defendants in that suit, and their assigns, notwithstanding seven years had elapsed Rev. Stat. chap. 22, sec. 45; chap. 77, sec. 1.

A foreclosure decree, instead of merging the mortgage lien and substituting therefor an ordinary judgment lien, is a judicial determination of the debt, and authorization of proceedings

to collect it by enforcing the mortgage lien at any time until the judgment or decree is barred by the Statute of Limitations. Jones on Mortgages, sec. 936, and cases cited; *Roberts* v. *Lawrence,* 16 Bradw. 453; *Priest* v. *Wheelock,* 58 Ill. 114; *Robinson* v. *Tate,* 82 id. 292.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Four contentions are urged by appellant:

*First*—It is claimed that the foreclosure decree was not final, but interlocutory, only, and therefore was vacated by the order of dismissal of April 21, 1880. The decree was, under our understanding of the law, a final decree. It was one from which either the complainant in the bill or the owners of the equity of redemption could have prosecuted an appeal, and one under which, after the expiration of the time limited therein, the master in chancery could have made a sale of the premises. The matters in litigation in the suit, as between Runals, the complainant therein, and the owners of the equity of redemption, were the existence and maturity of the debt, the amount due, the existence of the mortgage securing the debt, the right to foreclose the same, and the right of the complainant to have a decree for the sale of the mortgaged premises to pay the debt, interest and costs. These litigations were all determined by the court and settled by the decree. The master was ordered to make sale of the real estate, and bring the moneys arising from such sale into court. The only thing which remained to be done in which the mortgagors, or those succeeding to their rights, had any interest or concern, was the mere enforcement or carrying into execution of the decree. It was wholly immaterial to them how the proceeds of sale were distributed. A decree foreclosing a mortgage and decreeing a sale of the mortgaged premises is a final decree, and this even though the master is ordered to make a report of the sale. Here, a controversy arose between Runals, Sandheimer and

Roberts, to which the holders of the equity of redemption were not parties, and which did not affect them. Sandheimer claimed, as pledgee of the notes secured by the mortgage, that he was entitled to receive a portion of the proceeds of sale that the court had decreed should be brought into court, and Roberts contended that, as receiver appointed in a creditor's suit pending against Runals, he was entitled to have all or a portion of the moneys that should be realized, and that what the court had already ordered to be brought into court should be paid over to him. The court thereupon left the decree for foreclosure and sale still standing and in full force, and vacated only such portions of the decree as indicated that Runals was entitled to receive a certain portion and Sandheimer a certain other portion of the moneys that should be paid or brought into court, and ordered "that the determination of the proper party entitled to said moneys be reserved for the further order and decree of this court." The contention between Runals, Sandheimer and Roberts was merely incidental and collateral to the suit against the owners of the equity of redemption, and in it they had no interest, and no right to be heard. *Fergus* v. *Woodworth,* 44 Ill. 374; *Myers* v. *Manny,* 63 id. 211; *Freeman* v. *Freeman,* 66 id. 53; *Munger* v. *Jacobson,* 99 id. 349; *Chicago Life Ins. Co* v. *Auditor,* 100 id. 478; *Walker* v. *Schum,* 42 id. 462; *Pogue* v. *Clark,* 25 id. 351; *Whiting* v. *Bank of the United States,* 13 Pet. 6; *Bromson* v. *L. C. & M. R. R. Co.* 2 Black, 524; *Graham* v. *Hardin's Executrix,* 4 Dana, 559; *First Nat. Bank* v. *Shedd,* 121 U. S. 74; *Land Co.* v. *Peck,* 112 Ill. 408.

If the decree of foreclosure entered in March, 1876, was a final decree, then it needs no citation of authorities to show that the circuit court had no power at a subsequent term, and years afterwards, on April 21, 1880, to enter an order dismissing the suit, which would or could have the effect to set aside and vacate such final decree. It follows that the first point made by appellant is not well taken.

*Second*—Section 44 of the Chancery act provides : "A decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law." A judgment at law, in a court of record, is a lien on the real estate of the person against whom it is obtained only for the period of seven years from the time it is rendered, and ceases to be such lien if an execution is not issued thereon within one year. (Rev. Stat. chap. 77, sec. 1.) It is claimed by appellent that the decree of foreclosure in question was a money decree, within the meaning of said section 44, and that as more than seven years had elapsed since the entry of the decree, and no steps had been taken to enforce the same, she purchased the mortgaged premises discharged from the lien of the decree. We think it very plain that said section controls only decrees *in personam*, and does not embrace a mere decree *in rem*,—as, where a court forecloses a mortgage and determines the amount due, and orders that in default of payment within a specified time the property specifically mortgaged be sold for its satisfaction, and renders no personal judgment or decree against those personally liable for the mortgage debt, and awards no execution, conditionally or otherwise, against them. It was expressly so decided in *Karnes* v. *Harper*, 48 Ill. 527.

Section 16 of the Mortgage act provides that a decree *may* be rendered against defendants personally liable for the mortgage debt, if there be personal service, for any balance of money due over and above the proceeds of sale, and that execution may issue for such balance the same as when the decree is solely for the payment of money, and that such decree may be rendered conditionally, at the time of foreclosure, or after sale and ascertainment of the balance due. Said section was under consideration in *Eames* v. *Germania Turn Verein*, 74 Ill. 54. But that case does not overrule *Karnes* v. *Harper*, as seems to be supposed. The decree in question in the *Eames case* expressly provided that if the sale failed to produce a sum

sufficient to pay the decree, then an execution should issue for
the balance, and the court merely gave force and effect to the
provisions of the Mortgage act above mentioned.   The court,
referring to said decree and said section of the statute, said:
"This section undoubtedly authorized a money decree in the
case," and further said:   "That this was, either in whole or
in part, a money decree, we think can not be controverted."
It was held that it was a decree for money, within the mean-
ing of said section 44 of the Chancery act, and became a lien
upon the real estate of the party against whom it was ren-
dered, but that since an execution had not issued within one
year from the time of its rendition, such lien had ceased to
exist.   That the property involved in the *Eames case* was real
estate other than the mortgaged premises is manifest from the
statement in the opinion of the court that section 16 of the
act in relation to mortgages in nowise had any bearing on
the lien.   Such a decree should be on *other property* than the
mortgaged premises.   But the decree under consideration in
the case now at bar was not a decree *in personam* against the
party personally liable for the mortgage debt, and did not
award an execution against him.   It was not a decree against
any of the defendants personally, but was, in effect, an alter-
native decree, that if the money should not be paid within the
time limited then the premises should be sold.   (*Gochenour* v.
*Mowry,* 33 Ill. 331; *Glover* v. *Benjamin,* 73 id. 42.)   The con-
clusion, therefore, must be that it was not a money decree,
within the purview of section 44 of the Chancery act.

    *Third*—Section 45 of the Chancery act reads thus: "All
decrees given in causes in equity in this State shall be a lien
on all real estate respecting which such decrees shall be made;
and whenever, by any decree, any party to a suit in equity
shall be required to perform any act other than the payment
of money, or to refrain from performing any act, the court
may, in such decree, order that the same shall be a lien upon

the real or personal estate, or both, of such party until such decree shall be fully complied with, and such lien shall have the same force and effect, and be subject to the same limitations and restrictions, as judgments at law." Appellant contends that the last clause of said section has reference to the first class of decrees mentioned therein,—*i. e.*, all decrees rendered respecting specific real estate,—and that therefore the right to sell her lots under the decree of March 1, 1876, was barred by the lapse of seven years from the date of the decree long prior to her purchase of them. This court had the three clauses of said section 45 under consideration in *Karnes* v. *Harper, supra.* It was there said: "This section provides for two liens, the first in cases where a decree is in respect to the real estate to which the decree is pronounced. The second is in cases in which a decree is rendered for the performance of an act other than for the payment of money, and when the court declares the decree to be a lien on real and personal property until the decree shall be complied with by the party. It will be observed that the words 'such lien,' follow in immediate connection with the language creating the second lien provided for by that section, and it manifestly refers to the latter and not the first. If it had been intended to apply to both, the plural and not the singular number would have been employed. The first clause refers to decrees rendered in regard to lands, and declares that they shall be a lien on such lands, but imposes no restrictions upon the lien. If this be the true construction of this section, it necessarily follows that the lien was not lost by a failure to have a certified copy of the decree issued within a year, or a sale made within the same period." This decision, giving this construction to the language of said section 45, was rendered in 1868, and when, years afterwards, in 1872, the General Assembly re-enacted the same section, and retained the identical words and phraseology that had already been judicially construed, it must be

presumed that they used such words and phraseology in the sense that had thus been placed upon them. Besides this, the interpretation placed by the court upon the statute was the announcement of a rule of property, and therefore it ought not to be changed. We think, then, that appellant can take nothing by her contention that the decree ceased to be a lien and was not enforcible against her because she purchased the mortgaged premises more than seven years after the entry of the decree, and no step had then been taken to enforce the same, by sale or otherwise.

*Fourth*—It is claimed by appellant that when she purchased the premises the record of the circuit court showed that the foreclosure suit had been dismissed, that she was a purchaser in good faith and for value, and that therefore she took title free from the decree of March 1, 1876. We have already seen that the order of dismissal entered in 1880 had no effect to set aside or vacate the final decree of foreclosure rendered in 1876. She was chargeable with notice, both of the recorded mortgage and of the decree based thereon. Besides this, the evidence shows that through her attorney she had actual notice both of the mortgage and of the decree. It moreover appears that she paid for the lots only about one-third of their actual value, and it is therefore fair to presume that when buying she took into consideration and made allowance for the existence of the decree and the continuing vitality of the mortgage debt and lien.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*