158 

Catherine Hughes et al., Defendants in Error, v. Dora P. Hoerich et al., Plaintiffs in Error.

Gen. No. 34,198.

 Heard in the first division of this court for the first district at the April term, 1930. Opinion filed November 3, 1930.

SHERWIN, DOSLAND, CONNER & MAYFIELD, for plaintiffs in error.

CHARLES J. GALLAGHER, for defendants in error; SHERMAN C. SPITZER and CHARLES F. GRIMES, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Catherine Hughes and the trustee named in the trust deed filed a bill to foreclose the trust deed which was given to secure an indebtedness. The evidence was taken before the master and a decree entered by the chancellor finding that there was due the complainant $13,111.02, and decreeing that it be paid by some of the defendants within three days, or the property conveyed by the trust deed be sold by the master, and out of the proceeds thereof pay the complainant, and if there was a deficiency, to report the same to the court. It is the ordinary foreclosure decree. The decree further found that the defendant Elias Neiman was the legal owner and holder of an indebtedness which was a lien on the premises being foreclosed but was subordinate to the lien of the complainant, Catherine

Hughes. Neiman has sued out this writ of error and his contention is that the decree should have given him a first lien on the premises.

The record discloses that Neiman is the owner of three deficiency decrees rendered in three foreclosure suits in which the defendant Sarah Korach was the maker of the notes and trust deeds. She is also the maker of the note and trust deed in the instant case. The three decrees in the three foreclosure suits were entered September 13, 1928, and the three trust deeds in those cases conveyed three pieces of property owned by defendant Korach. These properties were other and different from the property covered by the trust deed in the foreclosure suit before us.

The evidence further shows that on September 5, 1928, eight days before the three decrees were entered, Catherine Hughes, the complainant, sold the premises in question to the defendant, Sarah Korach, and on the same date, and as a part of the purchase price, took back the trust deed and note involved in the present foreclosure suit. The trust deed, however, was not recorded until October 2, 1928. On October 30, 1928, within a month after Sarah Korach purchased the property, she conveyed it to a third party and by mesne conveyances the premises came into possession of one of the defendants and there being a default in payment of the interest due on the mortgage, foreclosure was brought.

As stated, three foreclosure decrees were entered in favor of Neiman and against Sarah Korach on December 13, 1928, on property other than that in question. There were sales under these decrees and three deficiency decrees were entered November 2, 1928. The three decrees entered in favor of Neiman were the ordinary foreclosure decrees to the effect that unless the indebtedness found by the respective decrees was paid within three days, the property be sold, etc.

The sole question for decision is whether the three amounts found to be due from Korach to Neiman in the three decrees of September 13, 1928, were liens upon the premises being foreclosed superior to that of the lien of Catherine Hughes. Neiman contends that the three decrees rendered in his favor are superior to the lien of Catherine Hughes because they were entered September 13, 1928, while the trust deed in question was not filed for record until October 2, 1928. On the other hand, complainants contend that the three decrees were not a lien upon the premises in question until the deficiency decrees were entered November 2, 1928, which was after complainants' trust deed was filed for record. Complainants make a further contention that since the note in foreclosure here was given to evidence a part of the purchase money, the lien created by the trust deed would be superior to the claim of Neiman.

Neiman contends that the three decrees entered in his favor were decrees for the payment of money and by reason of section 44 of the Chancery Act, Cahill's St. ch. 22, ¶ 44, became a lien on the land in question. That section is as follows: "A decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law." And in support of this contention chief reliance is placed on the case of *Eames v. Germania Turn Verein,* 74 Ill. 54. We have carefully considered that case and are of the opinion that it is in point and sustains the defendants' contention. We are further of the opinion that under the authorities of *Karnes v. Harper,* 48 Ill. 527, *Kirby v. Runals,* 140 Ill. 289, and *Bouton v. Cameron,* 205 Ill. 50, the three foreclosure decrees are not money decrees within the meaning of section 44 of the Chancery Act, and that Neiman did not have a lien on the property in question until the entry of the three deficiency decrees.

In the *Eames* case there was a decree of foreclosure
on certain premises and it was held that this was a
lien on other real estate owned by the maker of the
mortgage. Chief Justice Walker delivered the opin-
ion of the court. The same justice also delivered the
opinion of the court in the *Karnes* case (48 Ill. 527),
which was a foreclosure proceeding. The court there
said (p. 529) : ''It is insisted that under the 14th sec-
tion of the chancery code [now section 44] or under
the 45th, the lien of the decree was lost by failing to
issue a copy of the decree or have the property sold
within a year after the rendition of the decree. The
14th section of the chancery code declares that de-
crees for money shall be a lien on the lands and tene-
ments of a party against whom it is rendered to the
same extent and under the same limitations as a judg-
ment at law. This section is intended to embrace gen-
eral decrees for the payment of money, when the pro-
ceeding is *in personam* and not specific and *in rem*.
In a proceeding to foreclose a mortgage in chancery,
the decree ascertains the sum due and orders the sale
of the specific property for its satisfaction. It is in
the nature of a decree *in rem*. The last clause of the
45th section, however, gives the lien to the same extent
and subject to the same restrictions as liens created
by judgments at law. This section provides for two
liens, the first in cases where a decree is in respect to
the real estate to which the decree is pronounced. The
second is in cases in which a decree is rendered for the
performance of an act other than for the payment of
money.'' And the court in the *Kirby* case (140 Ill.
289), held that on a bill to foreclose a mortgage a de-
cree may be entered against the defendant personally
liable if there was personal service for any balance or
money due over and above the proceeds of the sale,
and that an execution may issue for such balance, the
same as when the decree is solely for the payment of
money, and that such decrees may be rendered condi-

tionally at the time of foreclosure or after an ascertainment of the balance due, and that such holding in *Karnes v. Harper*, 48 Ill. 527, was not overruled by the *Eames* case, 74 Ill. 54. In the *Kirby* case the court said (p. 297): "*Second*—Section 44 of the Chancery act provides: 'A decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law.' A judgment at law, in a court of record, is a lien on the real estate of the person against whom it is obtained only for the period of seven years. . . . It is claimed by appellant that the decree of foreclosure in question was a money decree, within the meaning of said section 44, and that as more than seven years had elapsed since the entry of the decree, . . . she purchased the mortgaged premises discharged from the lien of the decree. We think it very plain that said section controls only decrees *in personam,* and does not embrace a mere decree *in rem,*—as, where a court forecloses a mortgage and determines the amount due, and orders that in default of payment within a specified time the property specifically mortgaged be sold for its satisfaction, and renders no personal judgment or decree against those personally liable for the mortgage debt, and awards no execution, conditionally or otherwise, against them. It was expressly so decided in *Karnes v. Harper,* 48 Ill. 527.

"Section 16 of the Mortgage act provides that a decree *may* be rendered against defendants personally liable for the mortgage debt, if there be personal service, for any balance of money due over and above the proceeds of sale, and that execution may issue for such balance the same as when the decree is solely for the payment of money, and that such decree may be rendered conditionally, at the time of foreclosure, or after sale and ascertainment of the balance due. Said section was under consideration in *Eames v. Germania*

*Turn Verein,* 74 Ill. 54. But that case does not over-rule *Karnes v. Harper,* as seems to be supposed. The decree in question in the *Eames* case expressly provided that if the sale failed to produce a sum sufficient to pay the decree, then an execution should issue for the balance, and the court merely gave force and effect to the provisions of the Mortgage act above mentioned. The court, referring to said decree and said section of the statute, said: 'This section undoubtedly authorized a money decree in the case,' and further said: 'That this was, either in whole or in part, a money decree, we think cannot be controverted.' It was held that it was a decree for money, within the meaning of said section 44 of the Chancery act, and became a lien upon the real estate of the party against whom it was rendered, but that since an execution had not issued within one year from the time of its rendition, such lien had ceased to exist. That the property involved in the *Eames* case was real estate other than the mortgaged premises is manifest from the statement in the opinion of the court that section 16 of the act in relation to mortgages in nowise had any bearing on the lien. Such a decree should be on *other property* than the mortgaged premises. But the decree under consideration in the case now at bar was not a decree *in personam* against the party personally liable for the mortgage debt, and did not award an execution against him. It was not a decree against any of the defendants personally, but was, in effect, an alternative decree, that if the money should not be paid within the time limited then the premises should be sold. (*Gochenour v. Mowry,* 33 Ill. 331; *Glover v. Benjamin,* 73 Ill. 42.) The conclusion, therefore, must be that it was not a money decree, within the purview of section 44 of the Chancery act.''

In the *Bouton* case (205 Ill. 50), it was held that a money decree could be entered in a foreclosure proceeding only for the balance remaining unpaid after a

sale of the property had failed to produce the amount found to be due. The court there said (p. 66): "It is only by virtue of the statute that a money decree can be rendered by a court of equity in a foreclosure proceeding, and the statute only provides for a deficiency decree for the balance remaining due after a sale of the property has failed to produce the full amount found to be due. That a money decree can be rendered, in a foreclosure suit, for a deficiency only, has been decided by both this court and the Appellate Court. In *Cotes v. Bennett,* 183 Ill. 82, it was declared (p. 85): 'It is only in virtue of power conferred by the statute a money decree can be rendered by a court of chancery in a foreclosure proceeding against the mortgagor or other person liable for the mortgage debt. (8 Am. & Eng. Ency. of Law, 264.) Section 16 of chapter 95 of the Revised Statutes, entitled "Mortgages," authorizes courts in this State to render such decrees "for any balance of money that may be found due to the complainant over and above the proceeds of the sale or sales" of the mortgaged premises, and provides that such a decree may be conditionally rendered at the time the decree of foreclosure and sale is entered, or that it may be entered after the sale and ascertainment of the balance due. It is to be noted this statute authorizes such decrees to be rendered only "for any balance of money that may be found due to the complainant over and above the proceeds of the sale or sales" of the mortgaged premises.'

"In *Phelan v. Iona Savings Bank,* 48 Ill. App. 171, the rule is declared in the following language (p. 175): 'Decrees upon such bills [foreclosure] rested upon purely equitable principles and were solely for the purpose of foreclosing this right of redemption. The courts rendering them were without power or jurisdiction, in such proceeding, to render personal decrees for the indebtedness secured by the mortgage, or even for

a part of such indebtedness remaining unpaid after the sale of the mortgaged premises. . . . The mortgagee might, if he desired a judgment *in personam,* bring his action at law upon the indebtedness, and might at the same time file a bill in chancery for the foreclosure of the mortgagor's equity of redemption. The remedies are concurrent. (4 Kent's Com. 184.) The powers and jurisdiction of the courts of Illinois have been increased in respect of such matters by statutory enactment, but with this statutory power added, the courts of our State are yet without jurisdiction to render judgments or decrees for the payment of the mortgage indebtedness against defendants in foreclosure proceedings. The only addition to their power is such as is given by section 16 of chapter 95 of the Revised Statutes, which authorizes the rendition of a personal decree ''for the balance of money that may be found unpaid'' after the mortgaged premises have been sold and the proceeds applied upon the indebtedness. A decree against the defendants in a foreclosure proceeding for the whole debt would, therefore, be wholly extrajudicial.' ''

In the three foreclosure decrees it was decreed that some of the defendants pay the amounts found to be due within three days or the property would be sold. They were not money decrees within the meaning of section 44 of the Chancery Act as construed in the *Karnes, Kirby* and *Bouton* cases, *supra.* No execution could be awarded in these decrees until after sale and deficiency decrees were entered and the execution could only be for the deficiency. Section 16, chapter 95, Revised Statutes. The three deficiency decrees were not entered in the foreclosure suit until November 2, 1928, which was after the making and recording of the trust deed in the instant case, and therefore there was no money decree against Sarah Korach, the maker of the notes and trust deed, which

would be a lien on the property in question until after the note and trust deed in the instant case were made and the trust deed recorded.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.