The Springfield Marine and Fire Insurance Company

*v.*

Mildred A. Peck.

*Filed at Springfield March 28, 1882.*

1. Error—*who may assign—only party injuriously affected.* On bill for separate maintenance by a wife, the relief prayed for was granted, and a decree rendered also against a bank, which was made a co-defendant, for a portion of moneys paid over by it to the assignee of the husband after the service of an injunction on it, the assignment being only colorable, from which decree the bank alone appealed: *Held*, that the bank could not call in question the decree against the husband, or urge that the sum allowed was excessive, or that there was error in allowing a sum in gross, as it had no interest in such questions.

2. Injunction—*to preserve property for alimony or separate maintenance.* Where a wife, in her bill for a divorce or for separate maintenance, alleges that her husband is about to place his property beyond the jurisdiction of the court to control it, a court of equity will assume, by temporary injunction, to preserve the property within its control, so that it may be charged by a decree for alimony or separate maintenance, if granted.

3. Same—*party paying money in violation of injunction—liability.* Where a bank, in a suit by a wife against her husband for separate maintenance, was enjoined from paying to the husband, or to any other person upon his order or indorsement, any money on deposit in the bank, generally or specially, by the husband, and the bank, after the service of the injunction, paid the sum deposited with it to an assignee of the certificates of deposit, it

was *held,* that the bank paid the same at its peril, and the assignment of the certificates being shown to be merely colorable, the bank was held liable for the deposit, the same as if it had kept the same.

4. Assignment—*when payment is enjoined.* While it is true that a bank issuing certificates of deposit is not bound, before paying the same to an indorsee, to ascertain whether the assignment was in good faith, yet if it is enjoined from paying the deposit to the depositor, or his assignee, it is its duty not to pay out the funds so deposited until the parties claiming the same can have an opportunity to contest, by interpleader or otherwise, the good faith of the assignment.

5. Same—*of a bank deposit.* Where a depositor draws his check on his general account on a bank having funds deposited by him to an equal or greater sum than is called for by the check, the transaction will operate to transfer the sum named to the payee, who may sue for and recover the amount from the bank in his own name, and in like manner the assigning of a certificate of deposit transfers to the assignee the whole sum deposited, as stated in the certificate.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

Messrs. Stuart, Edwards & Brown, for the appellant.

Mr. William E. Hughes, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

The bill in this case was brought by Mildred A. Peck, in the circuit court of McLean county, against her husband, Philo W. Peck, for separate maintenance. The proceeding is had under a statute of the State.

The marriage of the parties, and the facts that are alleged would warrant complainant in living separate and apart from her husband, are all set forth with sufficient definiteness in the bill. It is conceded the proof offered in support of the allegations of the bill in this regard is sufficient to warrant a decree for separate maintenance. The decree in this respect is not called in question, either by any assignment of error, or by the argument of counsel.

It will be noticed the bill contains an allegation defendant "had money, notes and real estate," and on information and belief it was charged' he had on deposit in the "Springfield Marine and Fire Insurance Company" the sum of $2500, but whether on general or special deposit, was not known. It was also charged defendant had declared his intention of departing from the State and going to parts unknown, where he could not be compelled to support complainant and her children. The bank in which it was represented defendant had money deposited, was named as a co-defendant with him, and a temporary injunction was asked to restrain defendant, among other things, from assigning the certificates of deposit which he held, or from collecting the same from the bank, and also restraining the bank from paying them. The prayer of the bill in that regard was allowed. Service of the injunction was made on the bank on the 10th day of January, 1881, and on the principal defendant on the 14th day of the same month. The bank answered the bill, and after disclaiming any knowledge of the relations between the parties, admitted that on the 4th day of December, 1880, defendant deposited in the bank $2500, and there were issued to him three certificates of deposit, in the usual form, for the amount deposited, payable to the order of himself, on demand, on the return of the certificates properly indorsed, and further stated the certificates were presented to the bank by Sandford H. Little, "properly indorsed" by the depositor, and were paid in due course of business. Evidence introduced on this branch of the case shows the certificates of deposit were neither assigned nor paid until after the service of the writ of injunction on both the bank and defendant, Peck. No answer was made by Peck, and as to him the bill was taken for confessed.

On the hearing the court found the material allegations of the bill to be true, and entered a decree for separate maintenance. Among other facts specifically found by the court

in its decree, it was found defendant had left the State, and that he had on deposit in the defendant bank, at the date of the service of the injunction upon it, the sum of $2500, for which he held certificates of deposit in the usual form, that the indorsement of such certificates to Little was colorable, and that Little paid the identical money over to defendant shortly after he drew it out of the bank. As for separate maintenance, the court decreed complainant should have the net rents from certain real estate, and that the bank should pay to her for the same purpose $1500 of the money her husband had on deposit in the bank at the date of the service of the injunction. The bank prosecuted an appeal from the decree rendered, to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and now it brings the case to this court on its further appeal.

Whether the circuit court erred in allowing complainant an excessive amount for separate maintenance, or in allowing a sum in gross in lieu of maintenance, are questions in which it is apprehended the bank prosecuting this appeal has no interest. It is plain no one except the defendant out of whose estate payment is to be made, could complain of the decree in these respects, and he has not joined in this appeal. The circuit court, under the statute, had jurisdiction of the subject matter of the suit, and by service of process it had jurisdiction of the persons of the parties, and hence its decree is valid and binding on all persons until it is reversed on the application of some one directly interested. The decree, if erroneous in these respects, could only affect injuriously the husband, whose property is appropriated by the decree, and he is not now complaining. Had the bank retained the money deposited with it to abide the result of the litigation, it would have been immaterial to it whether it should return the money to its depositor, or pay a portion of it to complainant under the decree of the court for separate maintenance. It could make no possible difference to the

bank how the fund might be divided, or to whom it should be paid.

It is insisted the injunction was improperly issued in this case, and one reason assigned is, complainant had no specific lien on any property of her husband. A class of cases is cited in support of this proposition, that hold a creditor at large, or before judgment, is not entitled to the interference of a court of equity, by injunction, to prevent the debtor from disposing of his property in fraud of such creditor. Conceding, as may be done, the correctness of the doctrine insisted upon, it is not perceived what application it can have to the case in hand. A principle applicable to a contract creditor can have no appropriate application to a contest between husband and wife, either as to the preservation of the property for alimony, in case of a divorce, or for separate maintenance. The cases have no likeness to each other. Where the wife in her bill for divorce alleges the husband is about to place his property beyond the jurisdiction of the court to control it, a court of equity has always assumed, by temporary injunction, to preserve the property within its control, that it may be charged by a decree for alimony, should a divorce be granted. No reason is perceived why the same thing may not be done where the wife only asks for separate maintenance. Without the restraining order of the court, the final decree, in many cases, would be wholly unavailing to complainant, and the wife, in many instances, would be left without support for herself and children, in case the husband chose to depart from the State and take his property with him, or make other disposition of his property, before final decree could be obtained. Certainly the law will permit no such wrong as that, if the aid of a court of competent jurisdiction is invoked.

Another point relied on is, the bank, in paying the certificates to the assignee of the party making the deposit, violated no mandate of the court. This is a misconception of the

scope of the injunction writ, and of the evidence as to what was in fact done. It is apparent the scope of the restraining order of the court was comprehensive enough to embrace the funds on deposit, regardless of the form of the transaction. The prayer of the bill was, and the writ is quite as broad, the bank "be restrained from paying to Philo W. Peck, or to any other person upon his order or indorsement, any money now on deposit in said bank, generally or specially, to the credit of the said Philo." There could be no mistake as to the meaning of the order of the court. The officers of the bank must have known they were required to retain the money deposited by Peck at the time the certificates were issued to him. That is the plain reading of the writ. But the argument in favor of the position taken is, the relation between the bank and Peck was not that of depositor and depositary, but of debtor and creditor. The facts are not as the argument assumes them to be. It is said no deposit account of Peck would, or did, appear on the books of the bank. How that may be is not known to this court, as no evidence was offered by either party as to how the books in fact were kept, nor as to what they did show concerning the funds placed in the bank by Peck. The certificates showed on their face that Peck had deposited a certain sum of money with the bank. It must be the books of the bank show, in some way, the transaction. It is a matter of no consequence whether the funds deposited in such cases are credited to the "depositor" by name, or to the "certificate account." An entry is certainly made in some way to show the transaction, and no matter how it is done, it is a *deposit*, in the strictest sense of the term. It is therefore immaterial whether the relation existing is defined to be that of depositor and depositary, or of debtor and creditor. The fact certificates of deposit are negotiable under the laws of this State, as are promissory notes and bills of exchange, certainly does not prove the party had no funds on deposit with the bank issuing them.

On the contrary, it does affirmatively appear, by the writing itself, the person to whom such a certificate may be issued has funds on deposit, payable, on demand, to himself or his assignee, and certainly the bank is as familiar with that fact as is the holder of such a certificate. It is a matter of business experience, with which every one transacting that kind of business is familiar, that where the deposit is general the funds are payable, on demand, to the depositor, or to whom he may direct on his check. The rule is well understood that when a depositor draws his check on his general account on a bank having funds of his, to an equal or greater sum than the check, it operates to transfer the sum named to the payee, who may sue for and recover the amount from the bank in his own name; and in like manner the assigning of a certificate of deposit transfers to the assignee the whole sum deposited, as stated in the certificate. It is therefore plain the bank had on deposit, at the time of the service of the injunction upon it, funds belonging to Peck, as the evidence shows he had not then assigned his certificates to any one.

It is also insisted a bank issuing such certificates of deposit is not bound, before paying the same to an indorsee, to investigate and determine whether the assignment was in good faith. Most assuredly not; but when a bank is enjoined from paying the sum deposited with it, either to the depositor or to his indorsee, it is its duty to obey the mandate of the court, and not to pay out the funds deposited with it until the parties claiming the same can have an opportunity to contest, by interpleader or otherwise, the good faith of the assignment. That is precisely what the bank ought to have done in this case. To do otherwise was to act at its peril. It appears the bank, either inadvertently or willfully,—most likely the former,—paid out the funds in its possession at the time of service of the injunction, in violation of the mandate of the court. It now turns out, the assignment of the cer-

tificates of deposit to Little was not in good faith, but was a mere contrivance adopted to get the funds out of the bank for the benefit of the depositor himself. The mandate of the court enjoined upon the bank to hold the funds in contention until its further order in the premises, and its order should have been observed. The funds will be treated as still in the possession of the bank. It is no answer to say it has paid out such funds to the assignee of the depositor, in defiance of the authority of the court. The decree of the circuit court is clearly right, and must be obeyed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*