## May T. Cox, Appellee, v. Frederick W. Cox et al., on appeal of Elizabeth Jacobs, Appellant.

### Gen. No. 20,349.

1. HUSBAND AND WIFE, § 255*—*where separate maintenance proceeding to be brought.* In separate maintenance proceedings where the husband is a resident of the State, section 2 of the Separate Maintenance Act (J. & A. ¶ 6160) determines the county in which suit must be brought, but where he is a nonresident, Chancery Act, sec. 3 (J. & A. ¶ 883) controls.

2. HUSBAND AND WIFE, § 265*—*when no personal decree permissible in separate maintenance proceedings.* In proceedings for separate maintenance where no personal service is had upon a nonresident defendant, and he does not enter his appearance therein, no personal decree can be entered against him.

3. HUSBAND AND WIFE, § 255*—*when court may proceed in rem in separate maintenance proceedings.* In separate maintenance proceedings where no personal service is had upon a nonresident, nonappearing defendant, but property owned by him, is found within the jurisdiction of the court, the court has power to proceed *in rem* by requiring such property to bear the obligation of defendant to provide for the support and maintenance of his wife.

4. HUSBAND AND WIFE, § 265*—*when insurance fund may be subjected to payment of alimony.* In separate maintenance proceedings against a nonresident, nonappearing defendant, upon whom no personal service has been had, the court may by decree make proper allowance for the support and maintenance of the wife and subject a fund in the hands of an insurance company over whom jurisdic-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion had been obtained, owned by the defendant under the terms of a twenty-year tontine policy, to the payment of the amount allowed.

5. HUSBAND AND WIFE, § 265*—*form of decree in rem in separate maintenance proceeding.* Where in a separate maintenance proceeding against a nonresident, nonappearing defendant, upon whom personal service had not been had, the court after making a decree for support proceeds *in rem* against property owned by defendant within its jurisdiction, the decree should be in the nature of the usual foreclosure decree, finding the amount due, and directing that if such amount be not paid within a specified time, the property will be sold to satisfy the decree, and such a decree is *in rem* and not *in personam*.

6. HUSBAND AND WIFE, § 265*—*when decree in separate maintenance proceeding is in rem.* Even though a decree in separate maintenance proceedings against a defendant over whom personal jurisdiction was not acquired, in terms orders the defendant to pay the amount found to be due to the complainant within a specified time, or, that in default thereof, the property of defendant, over which the court had acquired jurisdiction, be sold to satisfy the same, the alternative feature of the decree preserves its character as a decree *in rem*.

7. HUSBAND AND WIFE, § 241*—*when decree in separate maintenance proceedings erroneous as not based on evidence.* A decree in separate maintenance proceedings awarding a certain sum to complainant for her support and maintenance is erroneous where no evidence was introduced as to the present "condition in life" of the husband, or his present means or ability to ·pay alimony.

8. HUSBAND AND WIFE, § 242*—*when decree in gross erroneous in separate maintenance proceedings.* A decree in separate maintenance proceedings awarding a certain sum in gross to complainant for her support and maintenance is erroneous.

9. APPEAL AND ERROR, § 1039*—*when assignee of insurance policy may assign error.* Where in a separate maintenance proceeding, against a nonresident defendant over whom personal jurisdiction had not been acquired, complainant joined as parties defendant an insurance company, and the assignee of an insurance policy upon the life of defendant, such assignee is entitled to assign error upon a decree awarding the fund to complainant, and such an assignment necessarily involves a consideration of the validity of that portion of the decree upon which the right of complainant to the fund is based.

10. HUSBAND AND WIFE, § 265*—*when decree in separate maintenance not sustained on theory that complainant was a creditor.* In

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

separate maintenance proceedings against a nonresident defendant over whom personal jurisdiction was not acquired a decree awarding complainant in gross a fund in the hands of an insurance company under the terms of a twenty-year tontine policy upon her husband's life without evidence as to his means or condition in life, cannot be sustained upon the theory that complainant was a creditor of her husband merely because on a prior suit for limited divorce in another State a monthly allowance of temporary alimony had been made in her favor, payment of which had ceased upon a reconciliation being effected, especially where the bill ˙was not framed upon that theory and the decree does not find anything due her on account thereof.

11. INSURANCE, § 503*—*when interest of beneficiary ceases in twenty-year tontine policy*. Under a twenty-year tontine policy, by the terms of which a certain sum was payable to the beneficiary upon due proof of the death of the insured "during the continuance of this policy," and providing further that the insured if living at a certain date should be entitled to receive, in cash, the value of the policy at that time, the interest of the beneficiary ceases upon the expiration of such period, the insured still surviving.

12. INSURANCE, § 180*—*what are rights of assignee of twenty-year life policy*. An assignment without consideration of a twenty-year tontine policy prior to the date when it matures conveys a contingent future interest only, subject, in equity, to the right of the wife of the insured, who was also the beneficiary named in the policy, to have a reasonable provision made for her support and maintenance.

13. INSURANCE, § 180*—*what are rights of assignee as against wife of insured in separate maintenance proceedings*. Where prior to the expiration of a twenty-year tontine policy which the insured had assigned to a third person as a gift, the beneficiary thereunder, who was the wife of the insured, commenced separate maintenance proceedings against the insured, joining the insurance company and the assignee as parties defendant, such assignment does not prevent the court from subjecting the fund to the payment of a reasonable allowance for the support and maintenance of complainant while living separate and apart from her husband and without her fault.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed April 22, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Statement by the Court. On January 13, 1913, Mrs. May T. Cox, appellee, filed her bill in the Circuit Court of Cook county against her husband, Frederick W. Cox, for separate maintenance. The bill charged him with extreme and repeated cruelty, adultery and desertion. Following these charges, the bill alleges that he has a joint interest with her in two lots in Milwaukee, Wisconsin, valued at $5,000, and is also possessed of a life insurance policy issued by the New York Life Insurance Company for $5,000, in which she is named as the beneficiary, and which, by its terms, "will mature on November 20, 1913." The bill prays for summons against Frederick W. Cox and the life insurance company, an injunction to restrain the former from disposing of the property named, and an injunction against the latter to restrain it from paying over to Frederick Cox or his assigns any of the moneys due on the insurance policy. An affidavit of the nonresidence of the defendant, Frederick W. Cox, was filed and service upon him was had only by publication.

On September 16, 1913, an amendment to the bill was filed, stating that information had just come to the complainant that Frederick W. Cox had made a pretended assignment of the life insurance policy to his sister, Elizabeth A. Jacobs, without any consideration, and "in order to further cheat and defraud complainant out of her just rights." The amendment makes Elizabeth Jacobs a party to the bill of complaint, and prays that she be enjoined from transferring the policy, that the assignment to her by Frederick Cox be set aside, and that the insurance company be directed to pay whatever may be due on the policy to the complainant.

A default was entered against the defendant, Frederick W. Cox, and the bill as to him was taken as con-

fessed. The life insurance company answered the bill on September 26, 1913, admitting that it had issued a policy upon the life of Frederick W. Cox, "that the twenty-year tontine dividend period of said policy will be completed November 20, 1913, and that the total value of said policy may be withdrawn in cash on and after that date;" also that the policy names "May T. Cox, wife," as the beneficiary, "with reversion to the insured." The answer further states that on November 30, 1910, the insured notified the insurance company in writing that he elected to receive the value of the policy in cash at the end of the "twenty-year accumulation period," to wit, November 20, 1913; also that on July 11, 1911, the insured had assigned the policy to Elizabeth A. Jacobs, which assignment the company had received subject to the condition that it did not accept any responsibility for the validity of such assignment.

Elizabeth A. Jacobs also answered the bill, setting up the same facts with reference to the insurance policy, asserting that the assignment to her was bona fide and for a good consideration, and claiming to be the rightful owner of the policy and its proceeds. The answer denies that Frederick W. Cox has any interest in the policy or its proceeds, and avers that the court has no jurisdiction over either the person or property of Frederick W. Cox in this proceeding. It also claims that by the terms of the policy, if Frederick Cox is alive on November 20, 1913, she will be entitled to receive the cash value of the policy, and that the rights of May T. Cox will wholly cease on that date. (It was conceded, on the trial, that Frederick W. Cox was living on that date, in Hong Kong, China.)

Upon the hearing before the court the complainant gave evidence tending to support the allegations of the bill as to the separation of the complainant and principal defendant, and the causes for such separation, and

also testified to the situation and value of the Milwaukee real estate. As to these matters, there was no contest. The only defense that was made by any one was made by Mrs. Jacobs as to the ownership of the life insurance policy and its proceeds. As to this question, the evidence tends to prove that twenty annual premiums of $13 each were paid on the policy; that the complainant paid the first ten premiums "out of her allowance;" that the succeeding nine premiums were paid by the defendant, Frederick W. Cox; that the last of the twenty was paid by Mrs. Jacobs, in November, 1912, out of money sent to her for that purpose by the defendant, Frederick W. Cox; that on November 20, 1913, there was due on the policy the sum of $2,241.45; that in November, 1910, Frederick W. Cox notified the insurance company in writing that he elected to take the value of the policy in cash at the end of the twenty-year period; and that in July, 1911, he assigned all his interest in the policy to Mrs. Jacobs.

Upon this evidence, the court found that the complainant was entitled to a decree for separate maintenance; that the defendant Frederick W. Cox had title to an undivided half interest in the two Milwaukee lots; and that the assignment of the life insurance policy to Mrs. Jacobs was a mere gift, without consideration, and as against the complainant was void. Thereupon a decree was entered adjudging "that the complainant have the right to separate maintenance as provided by the statutes of the State of Illinois;" that a special master in chancery therein named and appointed "execute a deed to the complainant" of all the interest of Frederick W. Cox in the above mentioned real estate; and that the New York Life Insurance Company "be decreed to pay for the separate maintenance of said complainant, to her or her order, the sum of $2,000, out of the money now due on said policy."

There is no other provision of any kind in the decree relating to alimony. From this decree, Elizabeth A. Jacobs appeals.

THOMAS J. PEDEN, and ROY C. MERRICK, for appellant.

WILLIAM E. MASON and LUCIUS W. BESTEL, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

Appellant contends that the court had no jurisdiction, in the absence of personal service of process upon the defendant, Frederick W. Cox, or any appearance by him, to render any decree having the practical force and effect of a personal decree against him for the payment of alimony, nor to render any decree affecting lands in another State; that in a separate maintenance proceeding an award of property or money in gross for the support and maintenance of a complainant is erroneous; that in any event, the award here made for that purpose is excessive; and that Frederick W. Cox had full power to assign as a gift to his sister all his interest in the life insurance policy and the proceeds thereof, without the consent of his wife, "the contingent beneficiary," because her interest therein ceased at the expiration of the "accumulation period."

The first section of the Separate Maintenance Act, as amended in 1891 (Hurd's Stat. 1912, ch. 68, sec. 22, J. & A. ¶ 6159) gives to a wife who, without her fault, is living separate and apart from her husband, a "remedy in equity, * * * for a reasonable support and maintenance, while they so live or have so lived separate and apart." The second section provides that suits for separate maintenance shall be in-

stituted in the county where the husband resides, except that in case the husband abandons the wife without fault on her part, and removes to another county in this State, then suit may be brought "either in the county where they resided at the time of such abandonment as aforesaid, or in the county where the husband resides at the time of the commencement of such suit."

In *MacKenzie v. MacKenzie,* 238 Ill. 616, it was held that these sections of the statute determine in what county or counties a separate maintenance suit may be brought when the husband is a resident of Illinois, but that when he is a nonresident, section 3 of the Chancery Act (J. & A. ¶ 883) controls. That section provides that if the defendant is a nonresident, suit may be brought in any county of the State. Under this construction of the separate maintenance Act, the jurisdiction, practice and procedure of a court of equity in such cases are practically the same as in suits for divorce. (See section 6, ch. 40, R. S., J. & A. ¶ 4221.)

In *Proctor v. Proctor,* 215 Ill. 275, it was held that where there is no personal service upon a defendant in a divorce case, and no appearance by him, the court is without jurisdiction to enter a personal money decree against him for the payment of alimony, solicitor's fees or court costs. The principle upon which that case was decided is stated as follows in the opinion of the court: "In so far as the proceeding at bar related to the marital relation and its dissolution the proceeding is regarded as one *in rem,* and the court was warranted in entering its decree dissolving the same. But the court could go no farther. It could not enter any binding decree *in personam* against plaintiff in error."

In the later case of *Williams v. Williams,* 221 Ill. 541, which was a bill in equity filed by a resident

against his nonresident partner to compel the adjustment of a partnership account, and to require the defendant to convey to the complainant his share of certain real estate located in this State, the title to which was in the defendant, it was contended that the court was without jurisdiction to grant the relief prayed for in the absence of personal service upon the nonresident defendant or an appearance by him. To this contention the court replied: ''The property of the co-partners was located in this State, and the court had ample authority to deal with that property. The effect of the decree was to require the conveyance of one-half of the lots belonging to the partnership to the complainant, and to direct that the amount found due the complainant should be made out of the undivided one-half of said lots, the title of which remained in the defendant. *While the court was powerless to enter a personal decree against the defendant, it had power to deal with the partnership property situated in this State. The decree was not void, therefore, for want of jurisdiction.*'' (Italics ours.)

From these decisions it follows that in proceedings for separate maintenance, as in other proceedings in equity, if no personal service is had upon a nonresident defendant, and he does not enter his appearance therein, no personal decree can be entered against him; but in such case, if any property belonging to such defendant is found within the jurisdiction of the court, the court has full power to proceed *in rem* by requiring such property to bear the obligation of the defendant to provide for the support and maintenance of his wife; and such decree will be as binding upon the defendant and all parties claiming through or under him, so far as his or their right to such property is concerned, as if he had been personally served with process. Therefore, while the Circuit Court had no jurisdiction in this case to enter a personal decree

against the defendant, Frederick W. Cox, for the payment of alimony, it had full jurisdiction to enter a proper decree finding the amount that would be a reasonable provision for the support and maintenance of the complainant while living separate and apart from her husband, and to subject the fund in the hands of the insurance company, by a proper order, in case it found such fund to belong to the husband, to the payment of such alimony. The usual decree in a foreclosure suit, finding the amount due and directing that if such amount be not paid within a specified time the property mortgaged shall be sold to satisfy the same, is an illustration of the proper kind of an order to be entered in such case. Such a decree is not a decree *in personam,* but is a decree *in rem. Kirby v. Runals,* 140 Ill. 289; *Crawford v. Nimons,* 180 Ill. 143; *Shaffner v. Appleman,* 170 Ill. 281, Even if the decree in terms orders the principal defendant to pay the amount found to be due to the complainant within a specified time, or that in default thereof, the property of such defendant be sold to satisfy the same, the alternative feature of such a decree preserves its character as a decree *in rem,* and does not make it a personal money decree against the defendant. *Kirby v. Runals, supra; Roberts v. Flatt,* 142 Ill. 485; *Bumgartner v. Hall,* 163 Ill. 136; *Pierce v. Coryn,* 139 Ill. App. 445.

The decree in this case, however, is of an entirely different character, both in form and substance. There is no finding that the principal defendant owes the complainant anything, or that he ought to pay her any sum of money for alimony or for any other purpose. The decree arbitrarily orders the insurance company to pay $2,000 of the fund in its hands to appellee, or her order, ''for the support and maintenance of said complainant.'' If, by this part of the decree, the court intended to find and adjudge that appel-

lee is entitled to receive from her husband $2,000 at this time for her support and maintenance, such portion of the decree is erroneous for two reasons: First, there is no evidence to support the finding; and second, it is improper in any case to award a sum in gross to a complainant in a separate maintenance proceeding. The separate maintenance statute provides that "in determining the amount to be allowed, the court shall have reference to the condition of the parties in life at the place of residence of the husband, and the circumstances of the respective cases." No evidence was introduced as to the present "condition of life" of the husband, or his present means, or his present ability to pay alimony, except that he is (or was several years ago) a man accustomed to receive a large salary, that he owns a half interest in two lots in Milwaukee, and that the life insurance company owes, either to him or his sister, the sum of $2,241.45. Whether he is possessed of anything apart from this property, or whether he is now earning anything, does not appear. In the absence of such evidence, it certainly cannot be assumed that in order to provide appellee with a reasonable support and maintenance while she continues to live separate and apart from her husband, it is or will be necessary to turn over absolutely to appellee, "or her order," practically all of this property. It has been held at least twice in this State that it is reversible error to make an allowance of alimony in gross in a case of this character. *Hunter v. Hunter,* 121 Ill. App. 380; *Raab v. Raab,* 150 Ill. App. 554. The reasons for this rule are fully stated in those decisions, and we think they are fully applicable to the facts of this case.

It is urged by appellee's counsel that appellant has no such interest in the question of separate maintenance, or in the disposition of the Milwaukee real estate, as to entitle her to question the findings and

decree of the court as to those matters.    Conceding this to be true, appellant is certainly directly interested in the disposition of the fund in the hands of the life insurance company, which she claims as her own.   For this reason, she has the undoubted right to assign error upon the findings and decree with reference to that fund; and in view of the fact (as hereinafter shown) that appellee's only right to any part of such fund is the right to have the same subjected to the payment of alimony after such alimony has been found to be due and owing to her, it follows that such an assignment of error necessarily involves a consideration of the validity of that part of the decree upon which such right of appellee to the fund is based.

Appellee's counsel further maintain that the order for the payment of $2,000 to appellee can be sustained upon the theory that appellee is a *creditor* of Frederick W. Cox.   This claim has its supposed basis in the following facts:   Mrs. Cox testified that in 1909 she instituted a suit for "limited divorce" against her husband in Pittsburgh, Pennsylvania, and that she was allowed $100 a month alimony in that case.   Apparently this was an allowance for temporary alimony, and she testified that she received the allowance for eleven months.   She also testified, however, that in 1910, about the time the case came on for trial, Mr. Cox became ill with typhoid pneumonia, and "begged her to forgive him," making certain promises which, she said, he afterwards failed to keep.   She testified that she nursed him through his illness, and when he recovered, she went with him to Baltimore to live, where, not long after, they again separated.   The inference naturally is that the divorce suit was dropped.   The decree or order for alimony entered in the Pittsburgh case was not offered in evidence.   That it is, or was at the time this case was tried, a subsisting order or decree for the payment of alimony to Mrs. Cox is in-

consistent with her evidence as to what occurred subsequent to the entry of such order or decree, and moreover, the bill in this case is not framed on any such theory. The decree in this case does not find that anything is due to appellee under the Pittsburgh decree, nor is there any evidence to sustain the theory that she was a creditor of her husband at the time this suit was brought.

Appellant finally claims that the court erred in finding that the assignment of the insurance policy to her by Frederick W. Cox was void as to appellee. It is contended that he had full power to assign to appellant, his sister, even without consideration, and as a pure gift, all his interest in the life insurance policy and the proceeds thereof, without the consent of his wife, because all her interest therein ceased at the expiration of the "accumulation period." This contention seems plausible, but we think it is fallacious. By the terms of the policy, the sum of $5,000 is payable to appellee upon due proof of the death of her husband "during the continuance of this policy." The meaning of this limitation is apparent from the further provision that if he is alive on November 20, 1913, and if all the premiums shall have been paid up to that time, he shall be entitled, at his option, to receive in cash the value of the policy at that time, such option to be exercised by giving notice in writing to the company prior to November 20, 1913. Appellee's rights as beneficiary, therefore, ceased on November 20, 1913, and thereafter the proceeds of the policy belonged to her husband, or his assignee. Before that time arrived, however, this suit was brought; and the service of process upon the insurance company, followed by its answer admitting the possession of a fund belonging to him, or his assignee, brought the fund under the jurisdiction of the court. Conceding that he had the right to assign his interest in the policy to his

Cox v. Cox, 192 Ill. App. 286.

sister in July, 1911, such assignment at that time was an assignment of a contingent future interest only. If, as the evidence seems to show, this assignment was a pure gift, and appellant paid nothing for it, it certainly could not be given the effect in a court of equity of transferring to the assignee any greater right to the fund than the assignor himself possessed; and as his right to the fund at the time it was due, November 20, 1913, was subject, in equity, to the right of appellee to have a reasonable provision made for her support and maintenance, appellant's right to the fund is subject to the same burden.

We conclude, therefore, that the mere fact that the interest of Frederick W. Cox in the fund now in the hands of the insurance company was assigned by him to appellant in July, 1911, without any consideration therefor, does not prevent the Circuit Court from subjecting such fund to the payment of a reasonable allowance for the support and maintenance of appellee while living separate and apart from her husband without her fault; but the amount of such allowance must first be determined from proper evidence as to the circumstances of the husband and wife, and must not be a sum in gross, but be payable at stated periods during the continuance of their separation.

For the reasons indicated, the decree of the Circuit Court will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*