Loretta J. Schneider, Appellee, v. George A. Schneider et al., Appellees. Liggett & Myers Tobacco Company, Appellant. P. Lorillard Company and United States Tobacco Company, Appellees.

Gen. No. 41,303.

60

Heard in the second division of this court for the first district at the June term, 1940. Opinion filed November 28, 1941. Rehearing denied December 10, 1941.

SCHUYLER & HENNESSY, of Chicago, for appellant; DANIEL M. SCHUYLER, of Chicago, of counsel.

PAYTON J. TUOHY, of Chicago, for appellee; PAYTON J. TUOHY, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

An action for separate maintenance and injunction brought by Loretta J. Schneider, plaintiff, against George A. Schneider, defendant. The complaint also made the following corporations defendants: The Continental Illinois National Bank and Trust Company of Chicago (hereinafter called the "Bank"), Continental Illinois Safe Deposit Company, The Northern Trust Company, American Tobacco Company, American Snuff Company, American Telephone and Telegraph Company (hereinafter called the "Telephone Company"), George W. Helme Company, Liggett & Myers Tobacco Company (hereinafter called "Liggett & Myers"), P. Lorillard Company (hereinafter called "Lorillard"), and United States Tobacco Company.

At the time the complaint was filed an affidavit of nonresidence was also filed, which alleged that the last

known address of George A. Schneider, the principal defendant, a lawyer, who had practiced at the Chicago bar for years, was % American Express Company, Paris, France. Since the commencement of the proceedings he has remained outside of the jurisdiction of the court. He was served by publication at his last known address, % American Express Company, Paris, France. An attempt was also made to serve him, at the same address, with copies of the summons, complaint and injunction, but these documents were returned to the Clerk of the Superior court marked "Left without address," "Return to sender." A witness in behalf of plaintiff testified, before the Special Commissioner, that she later mailed copies of the said documents to Schneider, at the same address, in a plain envelope with the return address of Tuohy & Fortune, and that that letter has never been returned to the return address; that she mailed all notices and copies of orders and petitions to Schneider and that "these have never been returned"; that copies of all subsequent pleadings filed by plaintiff were mailed to Schneider at the same address and were not returned. The evidence clearly shows that Schneider knew of the proceedings. He did not, however, see fit to file an appearance in the cause.

The present appeal is prosecuted by Liggett & Myers from an order entered directing defendants Telephone Company, Lorillard and Liggett & Myers, and each of them, to pay to the Commissioners theretofore appointed all sums of money then held by said defendants and in their possession and control, which were due and owing to the principal defendant, within five days from the date of the order, and that "upon the payment of said sums they accept the receipt of said Commissioners for said sums so paid and that said sums so received by said Commissioners be paid to the plaintiff, Loretta J. Schneider, on account of the indebtedness due her from the defendant, George A.

Schneider, and which now amounts to $2,000 and that due credit be given on account of said indebtedness to the defendant George A. Schneider for the sums so paid.'' Defendants Lorillard and Telephone Company complied with the order.

The complaint alleged that the principal defendant, Schneider, was the owner of real estate, situated in Cook county, Illinois, that he had money in the Bank, and held stock in the Telephone Company, Lorillard, Liggett & Myers and other corporations; alleged grounds for the issuance of the injunction against Schneider, the Bank, Telephone Company, Lorillard, Liggett & Myers and other corporations; prayed that Schneider's real estate, money, stocks and bonds be sequestered and that he be enjoined from selling, assigning, hypothecating, transferring, encumbering or otherwise disposing of his stocks and bonds in the Bank, Telephone Company, Lorillard, Liggett & Myers and other corporations, and also any money in the various accounts held in the name of Schneider; prayed that the Bank, Telephone Company, Lorillard, Liggett & Myers and other corporations be enjoined from permitting Schneider to transfer, assign, hypothecate, sell, encumber or otherwise dispose of stocks in the books and records of said corporations. After the injunction issued the Bank, Telephone Company, Lorillard and Liggett & Myers filed general appearances and answers to the complaint.

On June 27, 1939, plaintiff filed a petition alleging that Schneider had not made payments of $500 per month as directed by the court, and requesting the entry of an order allowing her further solicitor's fees and directing Telephone Company, Lorillard and Liggett & Myers to pay over to the clerk of the court all dividends due or which might thereafter become due to Schneider. Liggett & Myers answered the petition and denied that Schneider receives dividends and other payments in stock or in cash on account of his owner-

ship of the preferred stock of Liggett & Myers, and averred that from and after the entry of the order enjoining Liggett & Myers from paying dividends on said stock to Schneider, it had complied in every respect with the terms of the injunctional order and withheld payment of dividends on the stock. On November 1, 1939, the Commissioners petitioned for an order directing Telephone Company, Lorillard and Liggett & Myers to pay over to them dividends due to Schneider in the sums of $107, $200 and $525, respectively. Liggett & Myers answered the petition and alleged, *inter alia,* that it had in its possession $525 that was then due and payable to Schneider. The answer also alleged that Schneider was not served with a summons in the cause and that to enforce any order directing appellant to pay over any money or property to the Commissioners, or to any other person, except to Schneider, would deprive Schneider of his property without due process of law; that the court was without jurisdiction to order Liggett & Myers to pay any moneys then due to Schneider to the Commissioners until Schneider had been personally served with a summons, or until he had entered his appearance. Liggett & Myers also set up affirmative matters in its answer, alleging the wilful failure of plaintiff to demand a hearing on the merits of her case and the possibility of its being subjected to liability to Schneider in other jurisdictions in the event that the relief prayed for in the petition in question should be granted.

Plaintiff's theory of the case is that the proceedings are *in rem* or *quasi in rem;* that even though the principal defendant has not been subjected to personal service, the court had power to proceed against the property of the principal defendant located within its jurisdiction and to direct that such property be paid over to plaintiff for her support, maintenance and attorneys' fees; and that dividends on the stock of Liggett & Myers of which the principal defendant is

the holder of record, though declared after the proceedings were commenced, constituted a *res* within the jurisdiction of the court, since Liggett & Myers, at the time of the commencement of the proceedings, was qualified to do and was doing business in Illinois.

Appellant, Liggett & Myers, contends that the court was without jurisdiction to entertain the petition on which the order appealed from was based, since there has been no personal service on the principal defendant; that a proceeding for separate maintenance is statutory and purely *in personam* and does not fall within the purview of section 14 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.014], authorizing service by publication in actions "affecting property or status"; that the lower court had no power, statutory or otherwise, to seize personal property of the defendant within its jurisdiction and thus convert a purely personal action into one *in rem* or *quasi in rem*.

Appellant argues that the separate maintenance act is in derogation of the common law and must be strictly construed, and that the only power equity has under the act is statutory; "that the Court was without power, statutory or otherwise, to impart to the action the character of one *in rem* or *quasi in rem*"; that the maintenance act gives rise to an action *in personam*, purely, incapable of being maintained in the absence of personal service upon the defendant; that no steps by plaintiff could convert her action into one affecting property, and that, therefore, the trial court was without jurisdiction to enter the order appealed from.

Plaintiff argues that "the proceedings were *in rem* and the order for alimony could be enforced against the property itself within the jurisdiction of the Court, as the Court had jurisdiction of the subject matter and the *res* when the order was entered"; that the property sought to be dealt with was brought under the trial court's control and the court had the power to enter the order appealed from.

A proceeding for separate maintenance is an action in equity, and it would be a serious reflection upon equity if appellant's contentions are sound. Many years ago our Supreme Court, in *Ross v. Ross,* 69 Ill. 569, said (pp. 571, 572): "Notwithstanding the common law imposed the duty upon the husband to provide the wife with necessaries suitable to their condition in life, and the obstacles which, from special circumstances, sometimes lay in the way of its enforcement, still, courts of equity, though recognizing the common law duty, almost universally refused to take jurisdiction and enforce specific performance of it, but left the wife to her common law remedy. . . . Now, it was the inadequacy of the common law remedy, and the refusal of courts of equity to take jurisdiction for the enforcement of the husband's duty to furnish support and maintenance for his wife, that induced the legislature to pass the act of 1867, providing that married women who, without their fault, are living separate and apart from their husbands, may have their remedy in equity, in their own respective names, against their respective husbands, for a reasonable support and maintenance, to be allowed with reference to the condition of the parties in life and the circumstances of the respective cases. In construing this act, the court must have regard to the common law duty or obligation of the husband to support and maintain his wife, the remedy afforded by that law, its defects and inadequacy under many circumstances, and the remedy proposed by the statute, *and it is the duty of the court to so construe the act as to suppress the mischief and advance the remedy.* The object of the statute is apparent on its face. It is to confer jurisdiction upon the court of equity to enforce the common law duty of the husband to furnish support and maintenance for the wife suitable to the condition of the parties in life, upon her application, in all cases where she is living separate and apart from him without her

fault, or, in other words, under such circumstances as would enable her to avail herself of the common law remedy of obtaining such support upon the credit of her husband.'' (Italics ours.)

In *Springfield M. & F. Ins. Co. v. Peck,* 102 Ill. 265, the complainant brought her bill against her husband for separate maintenance. The decree found (p. 268) that ''defendant had left the State, and that he had on deposit in the defendant bank, at the date of the service of the injunction upon it, the sum of $2500, for which he held certificates of deposit in the usual form, . . . and that the bank should pay to her for the same purpose $1500 of the money her husband had on deposit in the bank at the date of the service of the injunction.'' The defendant bank appealed. The court said (p. 269) : ''It is insisted the injunction was improperly issued in this case, and one reason assigned is, complainant had no specific lien on any property of her husband. A class of cases is cited in support of this proposition, that hold a creditor at large, or before judgment, is not entitled to the interference of a court of equity, by injunction, to prevent the debtor from disposing of his property in fraud of such creditor. Conceding, as may be done, the correctness of the doctrine insisted upon, it is not perceived what application it can have to the case in hand. A principle applicable to a contract creditor can have no appropriate application to a contest between husband and wife, either as to the preservation of the property for alimony, in case of a divorce, *or for separate maintenance.* The cases have no likeness to each other. Where the wife in her bill for divorce alleges the husband is about to place his property beyond the jurisdiction of the court to control it, a court of equity has always assumed, by temporary injunction, to preserve the property within its control, that it may be charged by a decree for alimony, should a divorce be granted. *No reason is perceived why the same thing*

*may not be done where the wife only asks for separate
maintenance.* Without the restraining order of the
court, the final decree, in many cases, would be wholly
unavailing to complainant, and the wife, in many in-
stances, would be left without support for herself and
children, in case the husband chose to depart from the
State and take his property with him, or make other
disposition of his property, before final decree could
be obtained. Certainly the law will permit no such
wrong as that, if the aid of a court of competent juris-
diction is invoked.'' (Italics ours.)

Appellant concedes that a court of equity has broad
powers in a divorce proceeding and argues that this
fact explains the decisions in such cases as *Tuttle v.
Gunderson,* 254 Ill. App. 552; *Wilson v. Smart,* 324 Ill.
276, and *Pennington v. Fourth Nat. Bank,* 243 U. S.
269. In the *Wilson* case our Supreme Court held that
although a court is powerless to enter a decree based
solely on constructive service of process by publication
against a nonresident defendant, yet it has power to
deal with his property within the court's jurisdiction
where the object of the action is to reach and dispose
of such property or of some interest therein, and the
court may enter a decree binding on such property.
The Supreme Court in concluding its statement of the
law upon the subject uses the following significant lan-
guage (p. 282) : ''Constructive service of process upon
a non-resident defendant in a proceeding against or
concerning specific property of the defendant within
the court's jurisdiction will enable the court to render
a decree which is binding upon such property. Decrees
for alimony *or maintenance* in such proceedings, based
upon such service, have been sustained. *Pennington
v. Fourth Nat. Bank,* 243 U. S. 269; *Forrester v. For-
rester,* 155 Ga. 722; *Shipley v. Shipley,* 187 Iowa 1295;
*Twing v. O'Meara,* 59 id. 326; *Wesner v. O'Brien,* 56
Kan. 724; *Blackinton v. Blackinton,* 141 Mass. 432;
*Rhoades v. Rhoades,* 78 Neb. 495; *Wilder v. Wilder,* 93

Vt. 105; *Closson v. Closson,* 215 Pac. (Wyo.) 485, 29
A. L. R. 1371, and note 1381.'' (Italics ours.) *For-
rester v. Forrester, Shipley v. Shipley, Blackinton v.
Blackinton, Rhoades v. Rhoades* and *Wilder v. Wilder,*
cited by the court, involved actions for separate main-
tenance.

The question now before us has been passed upon by
this court in *Cox v. Cox,* 192 Ill. App. 286, decided in
1915. That was a separate maintenance proceeding
where no personal service was had upon the principal
defendant. Service was had upon him by publication,
but he did not appear. He owned property within the
jurisdiction of the court. While we held that no per-
sonal decree could be entered against him, we further
held (pp. 294, 295): ''. . . but in such case, if any
property belonging to such defendant is found within
the jurisdiction of the court, the court has full power
to proceed *in rem* by requiring such property to bear
the obligation of the defendant to provide for the sup-
port and maintenance of his wife; and such decree will
be as binding upon the defendant and all parties claim-
ing through or under him, so far as his or their right
to such property is concerned, as if he had been per-
sonally served with process. Therefore, while the Cir-
cuit Court had no jurisdiction in this case to enter a
personal decree against the defendant, Frederick W.
Cox, for the payment of alimony, it had full jurisdic-
tion to enter a proper decree finding the amount that
would be a reasonable provision for the support and
maintenance of the complainant while living separate
and apart from her husband, and to subject the fund
in the hands of the insurance company, by a proper
order, in case it found such fund to belong to the hus-
band, to the payment of such alimony. The usual de-
cree in a foreclosure suit, finding the amount due and
directing that if such amount be not paid within a
specified time the property mortgaged shall be sold to
satisfy the same, is an illustration of the proper kind

of an order to be entered in such case. Such a decree is not a decree *in personam,* but is a decree *in rem. Kirby v. Runals,* 140 Ill. 289; *Crawford v. Nimons,* 180 Ill. 143; S*haffner v. Appleman,* 170 Ill. 281." After giving further consideration to our ruling in the *Cox* case we are entirely unable to agree with appellant's argument that the ruling is unsound. The *Cox* case has been upon the books for many years, and our ruling therein has never been criticized in any case that has been called to our attention. In *Cory v. Cory,* 249 Ill. App. 293, the Appellate Court of the Fourth District followed the *Cox* case. In the *Cory* case the wife sued for separate maintenance, but as the husband was a nonresident. service was had by publication. There was a debt due the husband by a fire insurance company under a policy, and the insurance company was made a party to the proceeding. The decree ordered that the wife have the legal right to the policy of insurance and that the interest of the husband in the same be cancelled. The insurance company appealed from that part of the decree. The Appellate Court, in its opinion, states (pp. 296, 297): "Appellant contends that the court erred in entering any judgment or decree against it without first having obtained jurisdiction over the person of Walter P. Cory; that the situs of the alleged debt due from appellant to the said Walter P. Cory was in the State of Missouri where Cory resided. While a purely personal decree awarding alimony against a nonresident defendant who is notified of the proceeding by publication and who does not appear is not binding upon him, the proceeding will partake of the nature of a proceeding in rem where the complainant describes property of the defendant within the court's jurisdiction and prays that alimony and solicitor's fees be made a lien on said property, and the decree may provide that in the event of the defendant's failure to pay the sum fixed for alimony and solicitor's fees within a stated time the

property shall be sold to satisfy the decree. *Wilson v. Smart*, 324 Ill. 276. In that case the court was dealing with real estate within the jurisdiction of the court. We see no reason why a court of equity may not reach a debt due a nonresident defendant and subject it to the payment of alimony under a proper bill where the court has jurisdiction over the party who owes the debt. Where a court of law has jurisdiction over a garnishee who is indebted to a nonresident, a judgment may be rendered against the garnishee. The situs of a debt is not material in such cases. *Lancashire Ins. v. Corbetts*, 165 Ill. 592. We are of the opinion that if there is a debt due from appellant to Walter P. Cory it may be reached under a bill containing proper averments which would give the court jurisdiction. Without stating what those averments should be, we would call attention to the following cases: *Cox v. Cox*, 192 Ill. App. 286; *Forrester v. Forrester*, 155 Ga. 722, 20 A. L. R. 1363 and note 1381; *Pennington v. Fourth Nat. Bank of Cincinnati, Ohio*, 243 U. S. 269, L. R. A. 1917 F 1159.''

In the article on Husband and Wife in 30 C. J., p. 1078, the author states the law that governs separate maintenance proceedings. On page 1081 appears the following: ''A personal decree cannot be rendered against defendant in the absence of personal service of process upon, or appearance by him. But where the object of the suit is to compel the support and maintenance of the wife by reaching and appropriating, or fixing a lien upon, property of the husband within the jurisdiction, the suit may proceed to decree as an action in rem without personal service of process upon the husband.'' In support of this statement of the law the author cites *Cox v. Cox, supra,* and other cases.

We do not agree with appellant's argument that *Kelley v. Kelley*, 317 Ill. 104, supports its contention. In that case there was no seizure of the husband's

property when the order for temporary alimony was entered. It was strictly an order *in personam*. If appellant's position is sound, a husband might depart for Europe leaving behind, in this jurisdiction, a wife dependent upon him for support; there might be within this jurisdiction large property interests of various kinds belonging to the husband and yet the wife would be unable to secure support under the separate maintenance act solely because she could not secure personal service upon her husband. The husband, in the meantime, might be receiving a large income from the properties located in this jurisdiction. Equity would be weak, indeed, if it had not the power to aid the wife under such circumstances. Under the Supreme Court decisions that we have cited there can be no doubt that the trial court had sufficient equitable powers to enforce the object and purpose of the separate maintenance act. We adhere to our ruling in the *Cox* case and we hold that the contentions raised by appellant are without merit.

Appellant further contends that even if it could be contended that one suing under the separate maintenance act by proceeding properly could bring an action which would affect property within the meaning of section 14 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.014] authorizing service by publication, nevertheless, in the instant suit the property sought to be reached was not brought under the court's control before the maintenance order was entered, and therefore the plaintiff cannot succeed because the procedure she adopted was improper. On the day plaintiff filed her suit the trial court, upon her motion, entered an order enjoining the principal defendant from selling any of his stock in the corporations, and also enjoining the defendant corporations, including appellant, from transferring on their books any securities listed in Schneider's name or from pay-

ing out any moneys held by them in his name. The writ of injunction issued and was served on all of the defendant corporations. This injunction was a sufficient seizure of the principal defendant's properties to give the court jurisdiction to proceed *in rem.* (See *Pennington v. Fourth Nat. Bank,* 243 U. S. 269, 272, and the cases cited by Mr. Justice BRANDEIS in support of the court's ruling.)

Appellant contends that there is a possibility that it may be subjected to liability to the principal defendant in other jurisdictions and therefore the order appealed from should not have been entered. This fear on the part of appellant is groundless. If it obeys the order of the court it will do so by compulsion of law and will be fully protected against any possible claim of the principal defendant against it. It is significant that Telephone Company and Lorillard, each represented by able attorneys, complied with the order of the court.

The contention of appellant that equity should deny plaintiff the relief she seeks because, as appellant states, she had been dilatory in demanding a hearing and final judgment on the merits of her case against the principal defendant is without the slightest merit, but it shows the zeal of appellant in protecting the interests of Schneider. The Supreme Court's criticism of the attitude of the debtor bank in *Springfield M. & F. Ins. Co. v. Peck, supra* (p. 268), is equally applicable to the appellant.

Plaintiff strenuously contends that a number of the points urged by appellant in this court were not advanced in the trial court and therefore should not be considered here, but we do not deem it necessary to pass upon this contention.

Plaintiff has filed a motion in this court that the appeal be dismissed for the reason that notice of appeal was not properly served in conformity with the rules of practice. We reserved ruling upon this motion until

the final hearing of the cause. The motion will be denied.

The judgment order of the Superior court of Cook county is affirmed.

*Judgment order affirmed.*

SULLIVAN and FRIEND, JJ., concur.