## KEEN *v.* KEEN

[No. 180, October Term, 1947.]

*Decided June 16, 1948.*

The cause was argued before Marbury, C. J., Dela-plaine, Collins, Grason, Henderson, and Markell, JJ.

*Hilary W. Gans,* with whom were *Seth P. Taylor* and *Thomas F. Johnson* on the brief, for the appellant.

*William W. Travers,* with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellee.

34

MARBURY, C. J., delivered the opinon of the Court.

On April 17, 1946 the appellee filed her bill of complaint in the Circuit Court for Wicomico County against her husband, the appellant, asking for a divorce *a mensa* on the ground of desertion, the guardianship of a minor son who was then 20 years of age, permanent alimony and alimony *pendente lite* and counsel fee. It is alleged in the bill that her husband was formerly a resident of Wicomico County, but was now believed to be outside of the jurisdiction of the court, and an order of publication was asked for. Such an order was signed and published, the docket entries show that an affidavit, in accordance with Rule 10A of this Court, was filed, and the Court, on August 3, 1946, passed a decree *pro confesso*. On August 8th a hearing was held in open court, and on September 30th a decree was filed divorcing the appellee from the appellant, and ordering him to pay her the sum of $500 a month as alimony *pendente lite* from the date of the filing of the bill, and permanent alimony of $500 per month subject to the further order of the court, and $1,000 counsel fee for the services rendered the appellee by her counsel. The appellant was also ordered to pay the costs. During this period no counsel had filed his appearance for appellant, although it appears that he was represented by Mr. Seth P. Taylor, a member of the Wicomico County Bar, in negotiations and discussions about various matters in connection with the case. On November 27, 1946, Mr. Taylor entered what he called a special appearance for the defendant, and on the same day entered an order for an appeal to this Court. On January 29, 1947, he filed an order dismissing the appeal. On May 9, 1947, a petition was filed by the appellee requesting a citation for contempt, and a copy of this petition, with an order of court thereon, was served the same day on Mr. Taylor. On June 6, 1947, the appellant, through Mr. Taylor and another counsel, filed a petition in the case, reciting some of the allegations of the bill, stating they were untrue, calling attention to the fact

that the case had never been heard on its merits, alleging that the petitioner was taken by surprise, that he was a legal and bona fide resident of Nevada, and had there been granted an absolute divorce from appellee on September 17, 1946, that the appellee knew of the proceedings in Nevada according to her testimony, that the proceedings in Wicomico County were a fraud on the court, and asking that the petitioner be allowed to file an answer to the bill of complaint, to have the witnesses who testified for the plaintiff, including the plaintiff herself, recalled, and cross-examined, that petitioner be permitted to produce witnesses on his own behalf and to have such further proceedings as might be proper. This petition was sworn to by the appellant on the 29th day of May, 1947, before a notary public in Worcester County. On this petition an order to show cause was passed on June 10th, and served on the appellee's counsel. On June 24th she answered, stating that she did not want to prevent the appellant from offering any defense he deemed appropriate and advisable, but suggested to the court that he should not be permitted to offer any such defense until alimony and costs, including counsel fee, had been paid by him. On August 28th, appellee asked that the matter of the petition of the appellant and her answer be set for hearing, and the date for such hearing was accordingly fixed for September 5, 1947. On August 29, 1947, the appellant filed a motion to strike out the decree because there was no service of process upon him and he did not voluntarily appear, the court had no jurisdiction over him at the time of entering the decree, and he was a non-resident at the time of the decree, beyond the jurisdiction of the court, and because of the reasons contained in his petition previously filed. This motion was heard in open court on September 5th, and on November 6th an order was passed overruling the motion. On November 19th an order for this appeal, which was from this order, was filed. As the motion of August 29th referred to the petition of June 10th and as this petition had been set for hearing on September 5th, when the motion was

heard, it may be reasonably concluded that the order of the court, refusing to strike out the decree, was, in effect, a denial of the petition of the appellant, as well as of his motion, although the order refers only to the motion.

The contention of the appellant is that the chancellor had no jurisdiction over him *in personam*, and, therefore, could not order him to pay alimony and counsel fees. The chancellor based his ruling on Section 16 of Article 16 of the Code. This section was enacted by Chapter 324 of the Acts of 1908. Although it has been part of the statute law of the State for 40 years, neither its construction nor its validity appear to have been before this Court. It reads as follows: "In any decree for divorce against a non-resident, where alimony is prayed in the bill of complaint, and the same sets forth that the non-resident defendant is possessed of property in the State, the court shall have full authority to award alimony, and any property in the State of any person against whom alimony may be so awarded shall be liable for the same and subject to such decree as the court may pass in the premises. Any order of the court awarding alimony *pendente lite* shall have the same force and effect as in decree for divorce." It is, of course, the settled law of this State that a court is without authority to enter a decree *in personam* against a defendant, where personal service is not had upon him, and where he does not voluntarily appear. *Garner v. Garner,* 56 Md. 127; *McSherry v. McSherry,* 113 Md. 395, 77 A. 653, 140 Am. St. Rep. 428; *Ortman v. Coane,* 181 Md. 596 at page 600, 31 A. 2d 320, 145, A. L. R. 1388. Appellant contends that Section 16 of Article 16 must be interpreted in harmony with the requirements of Article 23 of the Declaration of Rights, and the 14th Amendment of the Federal Constitution, or otherwise it is invalid. The construction which, he claims, is necessary to give validity to the statute is that in order to give the court authority to subject any property of a non-resident in the State to the payment of alimony, such property must, in some manner by levy, attachment, injunction, sequestration or otherwise, be

made the basis of a jurisdiction *in rem* over it at the inception of the action. In support of this position he cites as authority *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565; *Pennington v. Fourth National Bank,* 243 U. S. 269, 37 S. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159; *Restatement, Conflict of Laws,* Section 106, page 163, comment (e) ; *Matthews v. Matthews,* 247 N. Y. 32, 159 N. E. 713; *Geary v. Geary,* 272 N. Y. 390, 6 N. E. 2d 67, 108 A. L. R. 1293; *Hicks v. Hicks,* 193 Ga. 446, 18 S. E. 2d 754; *Bray v. Landergren,* 161 Va. 699, 172 S. E. 252; *Rhoades v. Rhoades,* 78 Neb. 495, 111 N. W. 122; *Parker v. Parker,* Ohio App., 56 N. E. 2d 527; *Schneider v. Schneider,* 312 Ill. App. 59, 37 N. E. 2d 911; *Reed v. Reed,* 121 Ohio St. 188, 167 N. E. 684, 64 A. L. R. 1384; *Forrester v. Forrester,* 155 Ga. 722, 118 S. E. 373, 29 A. L. R. 1363; and *Holmes v. Holmes,* D. C., 283 F. 453.

The bill of complaint states that the appellant and the appellee are the owners as tenants by the entireties of real estate in Salisbury, Wicomico County, most of which is encumbered by mortgage, and are the joint owners of War Savings Bonds, that the appellee owns no property in her individual name, but the appellant does have such property rights in various securities and that the appellant was employed as a salesman, receiving in salaries and commissions $22,000 yearly. The allegation as to the personal property is not an allegation of property in the State. There is no allegation that appellant's employer had any funds in this State belonging to him at the time of the filing of the bill of complaint. Therefore, the only property in the State the bill alleges the appellant has is the real estate he owns with appellee as tenant by the entirety. Such property cannot be levied upon or attached for the debts of either the husband or the wife, and neither of them can dispose of it without the joinder of the other. Where a decree of absolute divorce is granted, then such property is held by husband and wife as tenants in common. In this case, however, the bill of complaint asks for a divorce *a mensa* which, if granted, would not affect the title to the prop-

erty held by the parties as tenants by the entireties. It would have been possible, however, for the court to grant a receivership over such property during the pendency of proceedings for the purpose of collecting the rents and income and eventually applying such proceeds to the support of the wife. (*Rhoades v. Rhoades, supra*). Therefore we have before us for determination the question whether Section 16 of Article 16 authorizes the entry of such a decree *in personam* as was filed against the defendant for alimony and counsel fees, not specifically restricted to collection from property within the State already under the jurisdiction of the court.

In the case of *Pennoyer v. Neff, supra,* decided 70 years ago in 1878, the Supreme Court had before it an Oregon statute where a money judgment was rendered against a non-resident who was not personally served with process within the State and who did not appear, service being had upon him by publication. Execution was issued on the judgment, and certain property was sold. This property was not attached or in any way brought within the jurisdiction of the court, and its first connection with the case was caused by the levy of an execution. The court, while admitting the authority of a state to subject property situated within its limits, owned by non-residents, to the payment of the demands of its own citizens against them, held that the basis of that authority was by virtue of the state's jurisdiction over the property of the non-resident, and that the extent of its jurisdiction was only that necessary to control the disposition of the property. In the case of *Pennington v. Fourth National Bank, supra,* the Supreme Court, speaking through Mr. Justice Brandeis, was discussing a case in which a wife obtained a decree of divorce in Ohio against a non-resident husband, and joined as defendant a bank in that state, in which her husband had an account. When the suit was filed, the bank was enjoined from paying out the deposit, and finally was perpetually enjoined from such payment, and was ordered to pay the balance to the wife. The husband endeavored

to collect from the bank on the theory that the action of the court was in violation of the 14th Amendment. The court said [243 U. S. 269, 37 S. Ct. 283] "The only essentials to the exercise of the state's power are presence of the res within its borders, its seizure at the commencement of proceedings, and the opportunity of the owner to be heard. Where these essentials exist, a decree for alimony against an absent defendant will be valid under the same circumstances and to the same extent as if the judgment were on a debt,—that is, it will be valid not *in personam,* but as a charge to be satisfied out of the property seized." In the case of *Geary v. Geary, supra,* decided by the New York Court of Appeals in 1936, a resident wife was granted a decree of separation and an order to the non-resident defendant to pay her each month $3,000 for her support and the support of her two minor children. The same judgment continued a receiver who had been previously appointed under an order for the sequestration of the property of the non-resident defendant. The sequestration order was passed after service of process had been made upon the husband personally in the State of California. The court held that in divorce actions where the "res" is the marital status of the resident of the state, there is a dual aspect. That aspect is that there may be a proceeding *in personam* to compel a husband to perform his obligations of support. The court further held that since seizure of the property was before judgment, and since the defendant had notice that his property was seized, and would be applied in satisfaction of any award of alimony made against him, he could not be held to complain that his property had been taken without due process of law. The court quoted the rule laid down in *Matthews v. Matthews, supra,* "It must, therefore, appear before judgment is entered purporting to deal with a non-resident's property, that by attachment, by injunction, by sequestration, in some manner, the court has laid hands upon his property within the State." [272 N. Y. 390, 6 N. Ed. 2d 72] The *Restatement, Conflict of Laws,* Section 106, comment

(e), lays down the rule as follows: "If no property is attached or otherwise proceeded against before the rendition of the judgment, there is no jurisdiction to render a judgment. The rendition of a judgment under such circumstances by a court of a state of the United States is in violation of the Fourteenth Amendment to the Constitution of the United States and is invalid even in the state in which it is rendered, and execution levied subsequent to the rendition of the judgment is also invalid."

Under these decisions, above referred to, or quoted, it appears to be clear that no general decree *in personam* can be rendered against a non-resident defendant, and that no decree binding specific property or seizing such property for purposes of application to the payment of support of a wife, can be validly entered unless the property is seized prior to the entry of the decree. The decree in this case is a decree *in personam* against the defendant, in a case in which he has not been summoned. It is, therefore, void and it cannot be saved under Section 16 of Article 16, because no attempt is made, either to limit its application to property within the State, or to limit its application to property which has been previously seized in order to give the court jurisdiction over it. We think the proper construction of Section 16 is that a court has jurisdiction to seize property belonging to a non-resident defendant before a decree is passed, and can then pass its decree directing that such property or its proceeds shall be applied to the payment of alimony. That was not the procedure in this case, and we must, therefore, hold the decree void, in so far as it requires the payment of alimony and counsel fees. The contention of the appellant with which we agree is that, as the filing of the bill for divorce in the case before us did not operate as *a lis pendens* against any of his property (*Feigley v. Feigley*, 7 Md. 537, 61 Am. Dec. 375) and as the court had no jurisdiction *in rem* over any specific property, it had no authority to enter a decree *in personam* for alimony and counsel fees.

The appellee contends that the voluntary appearance of the appellant in the case, after the decree, waived all jurisdictional defects, but this position cannot be sustained. As was said by the Supreme Court, in the case of *Pennoyer v. Neff, supra,* "the validity of every judgment depends upon the jurisdiction of the court *before it is rendered,* not upon what may occur subsequently." (Emphasis supplied.) The appellant could waive his right to contest the decree (*C. I. T. Corporation v. Powell,* 166 Md. 208, 170 A. 740), but he has not done so. On the contrary, he is strenuously insisting upon it. His action in filing the motion to strike out the decree is not such a waiver. If it had that effect, it would make it an impossibility ever to strike out a personal decree for lack of jurisdiction over the person of the defendant. (See *Hicks v. Hicks, supra.*)

However, appellant is now a party to this case for all present purposes, just as he would have been had he been a resident of the State, and properly summoned. He attempted to file a special appearance in order to take an appeal from the decree. A special appearance may be filed for the purpose of questioning the jurisdiction of the court, or if it is desired to quash summons or other proceedings. *Gemundt v. Shipley,* 98 Md. 657, at page 662, 57 A. 12; *McSherry v. McSherry, supra.* But if an appearance, no matter how characterized, is in effect a general appearance, it will have the result of binding the party appearing in subsequent proceedings in this case. An appeal from a decree covers all questions which may be involved in that decree, and is not confined to those provisions which the appellant may contend are void. Questions involving the sufficiency of the testimony or the actual merits of the case would have been before this Court had the appeal from the decree before us been consummated. It appears from the record that some such argument was at one time made, although Judge Henry in his opinion on the motion stated that the appellant "in his brief appears to have abandoned this contention". In the case of *Thames & Mersey*

*Marine Co. v. United States,* 237 U. S. 19, 35 S. Ct. 496, 498, 59 L. Ed. 821, Ann. Cas. 1915D, 1087, the government filed a demurrer to an action to recover a tax. It asserted in its demurrer that it appeared specially on the grounds of jurisdiction, but the court said that the demurrer raised not only the question of jurisdiction, but also the merits involving a decision as to the constitutionality of the tax. "Such demurrer is in substance 'a general appearance to the merits' * * * ". We think when the appellant entered his appearance on November 27, 1946, and filed his order for appeal to this Court, he became a party to the case for all present purposes. However, the appellant went much further than this. He subsequently, on June 6, 1947, filed a petition in which he asked that the case be reopened and that he be allowed to file an answer, cross-examine witnesses and produce witnesses of his own. He has, therefore, by his own voluntary actions, on two occasions, clearly rendered himself personally subject to the jurisdiction of the Wicomico County court.

It is our conclusion that the decree should be stricken out, that the decree *pro confesso* should also be stricken out, and that the appellant should be allowed to file an answer as he requests (and as the appellee substantially agrees) and to make such defenses as he may think proper to the bill of complaint filed against him. Such answer should be filed promptly, within the usual time allowed, counting from the return of the mandate from this Court, instead of the rule day. After an answer has been filed, the chancellor can then proceed to hear the case, with full jurisdiction to sign such a decree as he might enter in any such case where both parties are before the court, including allowance of alimony and counsel fees. If the appellant does not see fit to file an answer within the time limited, then the chancellor will have jurisdiction to enter a new decree *pro confesso,* and to proceed to decide the case, either on the testimony already given, or on that and any additional testimony offered. In either event, he will have authority to bind

the appellant for alimony and counsel fees, if he finds sufficient evidence to justify the entry of a decree *a mensa.*

> *Order reversed, decree and decree pro confesso stricken out, and case remanded for further proceedings in accordance with this opinon.   Costs here to be paid by appellant.*