## COLEMAN PARKER ALTMAN *v.* GISELE ALTMAN

[No. 1136, September Term, 1976.]

*Decided June 14, 1977.*

The cause was argued before MOYLAN, DAVIDSON and LISS, JJ.

*James M. Griffin,* with whom were *Stedman Prescott, Jr.* and *Staley, Prescott & Ballman, P.A.* on the brief, for appellant.

*Bryan Renehan,* with whom were *Jeffrey N. Greenblatt* and *Jackson Brodsky* and *Brodsky & Greenblatt* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

The factual situation in this appeal is not disputed by either the appellant or the appellee. The parties were married in Virginia in 1959 and subsequently moved to Maryland which was their marital domicile for the next 11 years. No children were born as a result of the marriage. In September, 1975, the appellant left the marital abode for what he said was to be an extended vacation. Mrs. Altman, the appellee, was suffering from advanced multiple sclerosis and did not accompany him. The appellant's travels continued over a period of months and included trips to California, where he visited his daughter, an extended visit in the western national parks and a stay in Europe. He finally landed in Las Vegas, Nevada. On March 10, 1976, the appellant returned to Maryland and removed his personal belongings.

Mrs. Altman, not unreasonably, interpreted the appellant's odyssey as an indication that he intended to breakup the marriage. She filed a bill of complaint with a show cause order attached in the Circuit Court for Montgomery County in which she prayed the court to grant her a divorce a mensa et thoro and to award her alimony pendente lite and permanent alimony. She was able to secure personal service on the appellant in Laurel, Maryland, on March 24, 1976. The parties had been residing in a condominium apartment in Bethesda, Maryland, which was titled in the name of the appellant. On March 30, 1976, the wife secured an order enjoining the appellant from selling or leasing the condominium pending the disposition of the rights of the parties. Subsequently, the husband conveyed title to the condominium to his wife subject to an agreement on her part to assume the monthly mortgage payment. At the time of the conveyance the equity in the condominium was between $8,000 and $10,000. There is no dispute as to this conveyance except with regard to the question of what effect, if any, should have been given by the chancellor to its value in reaching his decision as to an appropriate amount of alimony.

On June 14, 1976, some two months after the commencement of the appellee's suit in Maryland, the appellant obtained a decree of divorce a vinculo matrimonii from the appellee in the State of Nevada. It is conceded that the appellant's action in Nevada was filed subsequent to that of Mrs. Altman's action in Maryland; that she was not personally served (being notified by mail) and did not appear in person or by counsel to contest the Nevada divorce. The a vinculo decree in Nevada made no provision for alimony or support for the wife.

The appellee continued to prosecute vigorously her suit in Maryland and on September 1, 1976, a hearing was held before a master of the Circuit Court of Montgomery County. The appellee appeared before the master; the appellant did not but was represented by counsel of record. The master filed a report in which he recommended an order providing for a monthly payment of $325 as alimony pendente lite to be paid by the appellant. No pendente lite order was issued because the case was heard on its merits shortly after the master's recommendation. Testimony was taken from the wife and her daughter by a previous marriage. Again the husband did not appear but was represented by counsel of record. After considering the testimony and legal arguments, the chancellor concluded that the Montgomery County Circuit Court had jurisdiction to award alimony to the wife and that she had made out a case for such award. He entered an order directing the husband to pay the sum of $350 per month as alimony to the wife and that he pay $500 as a contribution toward her counsel fee. It is from that order that this appeal is filed.

The appellant raises two questions to be decided:

I. Did the chancellor have the legal authority to issue an order directing the appellant to pay permanent alimony and counsel fees to the appellee when prior to the entry of that order the husband, appellant, had been granted a divorce a vinculo matrimonii in another state (the validity of which decree had not been challenged by the wife) and

where it was concluded that the appellant had no real or personal property in the State of Maryland?

II. Was the chancellor's award of permanent alimony excessive?

I.

Those of us who have taken to our bosom that jealous mistress, the Law, have soon learned that the life of the law is not logic but experience. A blind and slavish imitation of the past for reasons which have long since lost their validity can only lead to stultification. If the law is to remain viable and responsive, it must be based upon reason; and when the reason for a law ceases, that law should also cease. The truth of that premise can be no more persuasively demonstrated than by the status of the law in this case.

Prior to 1969 the Maryland law was clear that a wife's right to support and counsel fees did not survive a valid dissolution of the marriage, i.e., Maryland subscribed to the unitary rule of divorce. In *Staub v. Staub*, 170 Md. 202, 183 A. 605 (1936), the Court of Appeals had before it a case in which the wife moved from Maryland to Arkansas where the court, acquiring jurisdiction by virtue of an order of publication against the husband, granted a decree of absolute divorce without any provision for alimony. Subsequently, the wife filed a petition for alimony in Maryland. The Court, not unmindful of a lack of uniformity in the decisions of other jurisdictions on this question of law, concluded that Maryland would continue to follow the unitary rule of divorce which says that a decree of divorce a vinculo in the absence of an award of alimony or a reservation of alimony amounted to final adjudication of the rights of the parties and terminated the wife's right to further adjudication or relief. Since alimony is allowable only as an incident to the status of marriage, the destruction of that status did not permit the survival of the right to alimony which is founded upon the common law obligation of a husband to support his wife. *See Marshall v. Marshall*, 162 Md. 116, 159 A. 260 (1932); *Tabeling v. Tabeling*, 157 Md.

429, 146 A. 389 (1929); *Emerson v. Emerson*, 120 Md. 584, 87 A. 1033 ( 1913).

The first breezes of the winds of change evidenced themselves in the two cases of *Johnson v. Johnson*. In the first *Johnson* case, 199 Md. 329, 86 A. 2d 520 (1952), the court had before it a factual situation in which the wife had obtained a decree in Maryland granting her a divorce a mensa et thoro and awarding her alimony and support money for their infant son. The husband then obtained a divorce a vinculo matrimonii from his wife in Florida in a proceeding in which his domicile in Florida was never questioned and in which the wife appeared and contested the case. The Florida decree contained a provision to the effect that nothing in the decree would be held or construed to relieve the husband in any manner from complying with the support and maintenance provisions of the a mensa decree previously granted by the Maryland court. In spite of that provision, the Court held that the power to award alimony and "suit money" did not survive the dissolution of the marital relation. The Court declined to adopt the "divisible divorce" doctrine promulgated by the United States Supreme Court in *Estin v. Estin*, 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, 1 A.L.R.2d 1412 (1948) *aff'g*, 296 N. Y. 308, 73 N.E.2d 113 (1947). It suggested that if a different result was desirable the Legislature was the proper instrument of change and that it "must first change the Maryland law so that power to make and change maintenance and expense allowances shall survive divorce." 199 Md. at 338-39, 86 A. 2d at 524.

In *Estin* the Supreme Court had before it a case in which both husband and wife were domiciled in New York and the wife obtained a decree of separation and alimony in New York. Later the husband obtained a Nevada divorce in a proceeding in which the wife was notified constructively but entered no appearance. The Nevada decree made no provision for alimony and the husband subsequently stopped making payments. The wife sued in New York for the amount in arrears. The husband appeared and defended on the ground that the Nevada decree should be given full faith

and credit by the State of New York. The New York Court of Appeals held that the divorce was valid but granted the wife judgment for the arrears of alimony on the theory that a support order can survive a subsequent divorce. The Supreme Court, speaking through Justice Douglas, held:

> "The result in this situation is to make the divorce divisible — to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern." 334 U. S. at 549, 68 S. Ct. at 1218, 92 L. Ed. at 1569.

A year after the first *Johnson* case the parties were before the Court of Appeals again in *Johnson v. Johnson,* 202 Md. 547, 97 A. 2d 330 (1953). That appeal considered the question of a release of stocks deposited with the Clerk of the Circuit Court No. 2 of Baltimore City to secure the payment of alimony to the wife. In reversing the trial court's refusal to release the stocks, the Court reaffirmed its prior holding that the Florida decree of divorce effectively dissolved the marriage and foreclosed the wife's right to claim alimony in the Maryland courts.

The future, however, cast its shadow ahead in a strong concurring opinion, written by Judge Hammond joined by Chief Judge Sobeloff, which expressed dissatisfaction with the results of Maryland's adherence to the unitary rule and invited the Legislature to correct the injustices which they found existed:

> "Under the reasoning and holding of *Staub v. Staub,* 170 Md. 202, 183 A. 605, if Mrs. Johnson had ignored the Florida divorce proceedings and the divorce had been granted *ex parte,* Maryland would have no jurisdiction to give or continue alimony. In these days of Nevada, Florida, Arkansas, and other prolific divorce States, this puts a separated wife in a real predicament. She is on the horns of a dilemma, having the alternative of submitting to

544

the jurisdiction of a foreign Court, where as an out-of-state defendant, she is under a disadvantage in seeking alimony, or of ignoring the foreign divorce proceeding and losing the alimony granted by her home Court entirely. Under the mores and practices of the times, it is hardly fair for Maryland to put its lady citizens in this predicament because of a narrow, artificial and unrealistic concept and judicial interpretation of alimony.

. . . .

If the Legislature amended the law so that a Court would have the power to require support of a former wife at any time that the interests of justice and the parties required it, regardless of whether the divorce decree had provided for alimony or had retained jurisdiction, it would add flexibility where both parties are Maryland residents, or where, as in the instant case, the wife and the property of the husband are in Maryland. The result which could have been achieved and which I would have urged in the present case, if the proposed change had been the law, would be far more fair and just than the result which had to come under the present state of the law." 202 Md. at 558, 561-62, 98 A. 2d at 278, 279.

The Legislature did not accept the invitation and the Court of Appeals in the case of *Dackman v. Dackman,* 252 Md. 331, 250 A. 2d 60 (1969), availed itself of the prerogative enunciated by Justice Oliver Wendell Holmes in *Southern Pacific Co. v. Jensen,* 244 U. S. 205, 221, 37 S. Ct. 524, 531, 61 L. Ed. 1086, 1100 (1917) (dissenting opinion), when he said, "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." Judge Hammond, who had by that time been elevated to the position of Chief Judge, attacked the question of the unitary divorce rule with gusto as evidenced by this quote:

"When the bonds of matrimony which have endured for years are severed unilaterally by the

husband when he becomes infatuated with another female, the indignity his spouse feels has been heaped upon her often may result in her determination to acquire from him financial support, the adequacy of which she measures by that indignity and, if he seeks a divorce to legitimatize his amour, the measure is weighted by her righteous duty to exact the toll that public morality demands. In such cases the price of the right to remarry may become so high that the husband may take counter measures reflecting the philosphy that the best defense is a strong offense." 252 Md. at 333, 250 A. 2d at 61.

In *Dackman,* the husband obtained a final and absolute ex parte divorce in Nevada, which his wife could not or did not choose to impeach in Maryland. The husband had considerable property in Maryland and the equity court awarded support and maintenance to the wife payable only from the husband's property in Maryland. The Court held it appropriate for a Maryland court to exercise its inherent power to award support payable to the wife from property within the court's jurisdiction under the circumstances set out in its opinion:

"It would seem particularly appropriate for a Maryland equity court to exercise that inherent power in a case in which the marital domicile was in Maryland for many years, the deserted wife continues to reside here, the adultery which is the fault which justifies support and maintenance — assuming it is proven that it occurred — took place in Maryland, there is ample property in Maryland to furnish the support, and the foreign divorce was granted without the wife being personally before the court. Under these circumstances, and we at this time limit our decision and holding to the particular facts of the case before us, we would affirm a suitable decree granting the wife support payable only from the property of her husband in

Maryland if the wife cannot or does not choose to impeach the Nevada decree and the trial judge finds it factually appropriate to grant such a decree." *Id.* at 346-47, 250 A. 2d at 68-69.

In a later case this Court had before it a case involving a factual situation similar to that in *Dackman, supra.* In *Colburn v. Colburn*, 20 Md. App. 346, 316 A. 2d 283 (1974), the only significant factual distinctions were that the husband was guilty of desertion rather than adultery and prior to the foreign a vinculo divorce the wife had obtained an a mensa divorce in Maryland. As in *Dackman*, it was found that there was property in Maryland to furnish support to the wife. In analyzing the *Dackman* decision, Chief Judge Orth of this Court (now an associate judge of the Court of Appeals) said:

"What *Dackman* said was that, an equity court, under its inherent right and power, could act in cases in which only support was sought, similarly to the way it may act in a decree for a divorce under the authority bestowed by Art. 16, Section 4. The precise holding was that a court of equity has the inherent right and power to require sequestration or attachment of a non-resident husband's property within its jurisdiction as a source of support and maintenance to a legally and factually deserving wife and to award her that support and maintenance from the property. The real significance of the holding, however, *was that the court has this right and power despite a decree of divorce granted by a foreign state without the wife being personally before the foreign court.* It is clear that this was a departure from the former rule followed in Maryland, even though the Court expressly limited its decision and holding to the particular facts of the case before it." 20 Md. App. at 362, 316 A. 2d at 292. (emphasis supplied).

In the case sub judice it is conceded that the marital domicile was in Maryland for many years; that the deserted

wife continued to live in Maryland; that the husband deserted the wife and was at fault for the breakup of the marriage; that the desertion took place in Maryland; and that the foreign divorce obtained by the husband was granted without the wife being personally before the foreign court. There are two facts which distinguish this case from *Dackman* — first, the appellant was personally served in Maryland before his suit was filed in Nevada, and, second, there is no real or personal property in Maryland from which support may be obtained other than by the enforcement of the trial court's order or by its inherent power to punish for contempt.

We think personal service on the appellant of the show cause order and bill for permanent alimony is of substantial significance in this case. In *McSherry v. McSherry*, 113 Md. 395, 400-01, 77 A. 653, 655 (1910), the Court in discussing the effect of service of process on a non-resident husband within the State, said:

> "A decree for alimony is a decree *in personam*, and unless the Court has jurisdiction over the person against whom it is passed it is not binding upon him. Such jurisdiction over a non-resident can only be acquired by service of process upon him within the State, or by his voluntary appearance, in person or by attorney. Constructive service by publication, or personal service of process beyond the limits of the State, is not sufficient, nor does a special appearance for the purpose of objecting to the jurisdiction of the Court confer upon that Court jurisdiction to decree on the merits of the case. *Garner v. Garner*, 56 Md. 127; *Fisher v. Parr*, 92 Md. 245, *Gemundt v. Shipley*, 98 Md. 657; *Pennoyer v. Neff*, 95 U. S. 714; *Harkness v. Hyde*, 98 U. S. 476; 2 *Bishop, Marriage, Divorce and Sep.*, Ch. 3; 14 *Cyc.*, 745.
>
> Where, however, a defendant appears generally, either in person or by attorney, or process is served upon him within the State, the Court acquires

jurisdiction over him for the purpose of the suit. It is said in 19 *Ency. of P. & P.* 574: 'When the original process has been served on the defendant he is in Court for every purpose connected with the action, and is charged with notice of whatever action the Court may take while the suit is pending.' Or, as stated in 1 *Freeman on Judgments* (4th ed.), sec. 142, 'Jurisdiction over a party, being obtained, continues until judgment.' And *Mr. Bishop* says: 'In these cases, as in all others governed by the like reasons, a voluntary appearance by the defendant, or the citation of him when found within the territorial limits of the Court, lets in the jurisdiction *in personam*, and then the personal judgment, which would otherwise be incompetent, may be rendered against him.' 2 *Bishop on Marriage, Divorce and Sep.*, sec. 81."

*See*: *Employers Liability Assurance Corp. v. Perkins*, 169 ¡Md. 269, 181 A. 436 (1935).

We hold that once Maryland obtained in personam and subject matter jurisdiction over the appellant it retained its jurisdiction over him and it even though he thereafter obtained a foreign a vinculo divorce from his wife. Nor do we accept the appellant's contention that the *Dackman* and *Colburn* cases narrowly restrict the Maryland Court's retreat from the unitary divorce rule to those cases which fit only into the criteria there enunciated — particularly the requirement that there be property in Maryland from which a monetary award of alimony could be enforced. To suggest that a wife's right to maintenance and support is dependent on a race to the courthouse door is, we believe, patently ridiculous. To require a female resident of this State, deserted by her husband, to follow him to Mexico, The Dominican Republic, Florida, Nevada, Alabama, Arkansas or any of the other "quickie" divorce havens and to litigate her right to alimony or support in those jurisdictions on pain of losing all right to alimony upon the issuance of a decree of divorce is, we think, manifestly unfair. In the light of the

appellee's physical condition in this case such a holding would be cruel and inhuman. Maryland has an interest in protecting the welfare of its citizens. Its taxpayers have a right to expect that erring husbands will not transfer the duty of support of their wives to the already staggering tax burden of social welfare.

We hold that where, as here, personal service on the husband has been obtained and where, as in *Dackman* and *Colburn*, the marital domicile was in Maryland for many years; the deserted wife continues to live here; the fault which justifies maintenance and support took place in Maryland; and the foreign divorce was granted without the wife being personally before the court — the fact that there is no personal or real property in Maryland is of no controlling significance and does not prevent the Maryland court from entering an appropriate order for alimony and support.

II.

In *Mays v. Mays*, 232 Md. 122, 122a, 192 A. 2d 80, 81 (1963), the court set out the criteria which may be considered in determining whether an award of alimony is excessive. It stated those criteria to be: "[t]he husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce and the fault that destroyed the home." *See also*: *Bowis v. Bowis*, 259 Md. 41, 267 A. 2d 84 (1970), and cases cited therein.

The testimony indicated that the appellant's income from his pension was $11,600 per year and that the appellee's income was approximately $7,500 per year. It indicated further that the appellant had the capacity to supplement his pension by gainful employment while the appellee, because of her progressively deteriorating condition, could not pursue any gainful occupation. The evidence indicated that the parties had been married for 17 years and that the breakup of the marriage had been occasioned by the

appellant's desertion of the appellee without any fault for that desertion being attributable to the appellee. Mrs. Altman because of her illness was forced to retire from her job and is confined to a wheelchair and is periodically bedridden. Medical expenses were indicated to be approximately $500 per month. Additional expenses were proven for mortgage payments, food, medicine and maintenance of the appellee's condominium apartment. The appellant complained that he was given no credit for the equity in the condominium which he conveyed to the appellee. The fact of the matter is, however, that the transfer of the mortgage obligation has removed a heavy burden from the appellant and transferred it to the appellee. It is obvious that there would be no comparable housing available to the wife at this price and the husband would be chargeable with providing such housing were it not for the condominium.

In making an award of alimony the court is required to use its judicial discretion. There is no special statute or rule governing this discretion. It must be exercised to the necessary end of achieving justice and based upon reason and law. *Donigan v. Donigan*, 208 Md. 511, 119 A. 2d 430 (1955).

The Court of Appeals has said in a number of cases that the award of alimony and support was within the sound discretion of the chancellor and his determination will not be set aside or modified unless the award clearly represented an abuse of discretion. *Willoughby v. Willoughby*, 256 Md. 590, 261 A. 2d 452 (1970); *Pet v. Pet*, 238 Md. 492, 209 A. 2d 572 (1965); *Mays v. Mays, supra.*

We have carefully reviewed the evidence in this unfortunate case. We have no right to quarrel with the appellant's determination that he could no longer live with his wife. We do, however, have the responsibility of determining whether the chancellor in the exercise of his sound discretion correctly considered the criteria established for the determination of the amount of alimony to be

awarded; whether he considered the needs of the wife, the ability of the husband to pay and has avoided the use of the alimony award as a means of punishment. We find no abuse of the chancellor's discretion and we shall affirm.

*Order affirmed.*
*Costs to be paid by appellant.*