## COLEMAN PARKER ALTMAN *v.* GISELE ALTMAN

[No. 82, September Term, 1977.]

*Decided May 5, 1978.*

484

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*James M. Griffin,* with whom were *Stedman Prescott, Jr.,* and *Staley, Prescott & Ballman, P.A.* on the brief, for appellant.

*Bryan Renehan,* with whom were *Jeffrey N. Greenblatt, Jackson Brodsky* and *Brodsky & Greenblatt* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

In this appeal we consider the extent to which a spouse may maintain an action for alimony in Maryland following dissolution of the marriage by a foreign ex parte divorce decree. After the Circuit Court for Montgomery County granted appellee's request for permanent alimony, the Court of Special Appeals affirmed in *Altman v. Altman,* 36 Md. App.

538, 373 A. 2d 1296 (1977). We then granted certiorari and we too shall affirm.

Because the relevant facts are both undisputed and uncomplicated, they may be summarized briefly. The chronology begins with the marriage of the parties in the State of Virginia in 1959. They subsequently moved to Maryland which became their marital domicile for the ensuing 11 years. In March 1976, appellee, who, by then had become afflicted with multiple sclerosis, instituted a suit in the circuit court for divorce *a mensa et thoro* and alimony, alleging that appellant had deserted her six months earlier. Despite appellant's otherwise extended absence from this state, appellee was able to effect personal service on him when he paid a brief visit to Laurel, Maryland several days after the suit was filed. Appellant then entered an appearance through counsel, but did not testify at the hearing before the chancellor.

In June 1976, appellant obtained in the Eighth Judicial District Court of Nevada a decree for absolute divorce in which the court found that he had been "an actual bona fide resident and domiciliary" of that state for six weeks immediately preceding the filing of the complaint. The Nevada decree made no provision for alimony or support. Appellee did not appear generally or specially in the Nevada proceedings, nor was she ever served personally with the complaint in the State of Nevada, but did receive a copy by mail at her Maryland residence.

At the hearing before him in September 1976, the chancellor (McAuliffe, J.), while recognizing the validity of the Nevada divorce decree, found that appellant had deserted appellee in September 1975, and awarded appellee permanent alimony in the sum of $350 a month and a solicitor's fee of $500. In affirming, the Court of Special Appeals held that the ex parte Nevada divorce decree did not preclude the circuit court, which had obtained *in personam* jurisdiction over appellant, from awarding alimony to appellee. 36 Md. App. at 548-49.

Relying heavily upon our decision in *Dackman v. Dackman,* 252 Md. 331, 250 A. 2d 60 (1969), appellant contends that

where a nonresident spouse has obtained an absolute divorce from a Maryland resident by means of a foreign ex parte decree, he cannot subsequently be ordered to pay alimony by a Maryland court of competent authority, unless he has property in the state from which to pay the award.[1] He maintains that "the existence of property in Maryland belonging to the defendant is a *jurisdictional prerequisite*" to the exercise of the authority of the circuit court to grant alimony. (emphasis added). The basic problem with this argument is that it fails to take account of the distinction, recognized in *Dackman,* between the requirements of jurisdiction on the one hand and the substantive legal right of a spouse to recover alimony on the other. Thus while a court may have sufficient contact with the parties to exercise jurisdiction to award alimony, it may nevertheless be prevented from issuing such a decree if, under applicable state law, the petitioning party is not entitled to recover.

In order for a court to impose upon a defendant a personal liability or obligation in favor of the plaintiff, it must have first obtained jurisdiction over the person of the defendant. *See Glading v. Furman,* 282 Md. 200, 202, 383 A. 2d 398 (1978); *McSherry v. McSherry,* 113 Md. 395, 400, 77 A. 653 (1910). This personal jurisdiction, in turn, may be exercised only if one of several jurisdictional "bases" exist. In Maryland these prerequisites to personal jurisdiction are largely dealt with by statute, and in particular Maryland Code (1974, 1977 Cum. Supp.), §§ 6-102 and 6-103 of the Courts and Judicial Proceedings Article.[2] Pursuant to § 6-102 (a) of the Courts

---

1. The evidence establishes that at the time this suit was commenced, appellant did own property in Maryland, which consisted solely of his equity in a condominium apartment valued at approximately $8,000. During the pendency of the suit in the circuit court, appellant apparently conveyed his interest to appellee. Nevertheless, since she took no steps to bring the property under the jurisdiction of the court by sequestration or attachment, *see* Keen v. Keen, 191 Md. 31, 40, 60 A. 2d 200 (1948), and since, in any event, appellee did not wish to limit the scope of her alimony relief to the value of such property, we shall, as have the parties and the courts below, proceed here as though no property of appellant existed in this state.

2. Maryland Code (1974), § 6-103 of the Courts and Judicial Proceedings Article, the so-called long arm statute, is not expressly made applicable to actions for divorce, alimony or support. As jurisdiction in the instant matter was based on service of appellant while present in Maryland, it is unnecessary to discuss the effect of the long arm statute here. We note with interest, however, decisions from other states which have invoked long arm

and Judicial Proceedings Article, a court of this state may exercise *in personam* jurisdiction over any "person domiciled in, served with process [while present] in, organized under the laws of, or who maintains his [principal] place of business in [Maryland]." Furthermore, § 6-102 (b) provides that the bases enumerated in the preceding section are not exclusive; reliance on common law criteria is thus not precluded. At common law, a state also has power to exercise judicial jurisdiction over an individual who enters an appearance in an action either personally or through a duly authorized attorney. *Cole v. Randall Park Holding Co.,* 201 Md. 616, 625, 95 A. 2d 273, 41 A.L.R.2d 1084 (1953); *Fairfax Forrest Mining and Manufacturing Co. v. Chambers,* 75 Md. 604, 614-15, 23 A. 1024 (1892); Restatement (Second) of Conflict of Laws § 33 (1971). If any of the above predicates exists in a given case, the court possesses power to adjudicate the controversy, provided the defendant has been afforded reasonable notice of the proceeding and a reasonable opportunity to be heard. Restatement (Second) of Conflict of Laws § 25 (1971); *see Miles v. Hamilton,* 269 Md. 708, 713, 309 A. 2d 631 (1973); *Little v. Miller,* 220 Md. 309, 315, 153 A. 2d 271 (1959).

In this case, appellee sought a judgment against appellant for alimony. It is virtually axiomatic that a decree for alimony operates as an *in personam* judgment and thus is not binding on the person against whom it is passed unless the court has acquired jurisdiction over him. *McSherry v. McSherry,* 113 Md. at 400; *see Keen v. Keen,* 191 Md. 31, 36, 60 A. 2d 200

provisions similar to our own to acquire *in personam* jurisdiction in alimony suits against nonresident spouses who commit marital wrongs in the forum state. *See, e.g.,* Nickerson v. Nickerson, 25 Ariz. App. 251, 542 P. 2d 1131, 1133 (1975), *cert. denied,* 113 Ariz. 326, 553 P. 2d 1200 (1976); Bunker v. Bunker, 261 Ark. 851, 552 S.W.2d 641, 643 (1977); Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656, 660 (1971); Ring v. Ring, 146 N.J. Super. 373, 369 A. 2d 993, 995 (1977); Sherwood v. Sherwood, 29 N.C. App. 112, 223 S.E.2d 509, 512 (1976). *See* Mizner v. Mizner, 84 Nev. 268, 439 P. 2d 679, 681, *cert. denied,* 393 U. S. 847 (1968); Mitchim v. Mitchim, 518 S.W.2d 362, 365-66 (Tex. 1975). *See generally* Note, *Long-Arm Jurisdiction in Alimony and Custody Cases,* 73 Colum. L. Rev. 289 (1973).

On April 8, 1978, the General Assembly enacted Senate Bill No. 553, which, subject to gubernatorial signature, would amend the Courts and Judicial Proceedings Article to add a new § 6-103.1, providing for the exercise of long-arm jurisdiction in civil proceedings "arising out of the marital relationship or involving a demand for child support, spousal support, or counsel fees."

(1948); *Woodcock v. Woodcock,* 169 Md. 40, 46-47, 179 A. 826 (1935). Since appellant not only was served with process while present in Maryland, albeit temporarily, but had also entered an appearance in the Montgomery County proceeding through local counsel, there can be no doubt whatsoever that the circuit court possessed full power to determine the merits of appellee's claim for alimony, despite appellant's unchallenged status as a domiciliary of Nevada.

Appellant's interpretation of our opinion in *Dackman* is misconceived. There the wife instituted suit for alimony in Baltimore City, seeking to obtain jurisdiction over her husband by constructive service in Nevada under former Code (1957, 1969 Repl. Vol.), Art. 75, § 95, now codified as § 6-102 (a) of the Courts and Judicial Proceedings Article, on the theory that her spouse was still domiciled in Maryland. Meanwhile, the husband had obtained an ex parte Nevada divorce decree which incorporated a finding that the husband was a domiciliary of that state. Armed with his divorce decree, the husband moved to dismiss the pending Maryland proceeding, alleging a lack of personal jurisdiction over him. Even though the wife had failed to rebut the presumptively valid determination of domicile in the Nevada decree, the trial court denied the motion to dismiss. The husband thereupon appealed to this Court. Holding the denial of the husband's challenge to the trial court's jurisdiction to be a nonappealable order, we remanded the case for further proceedings. Nevertheless, we did take the opportunity to express our views on the viability of the wife's action for alimony in light of the prior Nevada divorce.

Under the facts in *Dackman,* it was clear that the trial court would have lacked power to issue an *in personam* decree ordering the husband to pay alimony. Since the husband had neither been served in Maryland nor had entered a general appearance here, the only remaining predicate for the exercise of personal jurisdiction over him would have been his putative Maryland domicile. Even this possibility, however, was negated by the contrary finding in the unimpeached Nevada decree. It was therefore necessary to consider an

alternative ground on which to rest the power of the lower court to grant the requested relief.

We found such a basis for jurisdiction in the inherent authority of an equity court to sequester property within its jurisdiction as a source of support and maintenance to an otherwise eligible wife:

> "*Where the court cannot obtain jurisdiction in personam* over the husband it may award support, if the wife proves misconduct or behavior which would justify granting her a divorce, *payable from property* of the husband within the court's jurisdiction." (emphasis added). 252 Md. at 345.

In other words, the presence in Maryland of property belonging to the husband, coupled with other factors connecting the controversy with this state, such as the fact that Maryland was also the former marital domicile, the wife's present domicile, and the situs of the alleged marital wrong, provided sufficient contacts to warrant the exercise of a limited, *quasi in rem* jurisdiction over the nonresident husband. *See Shaffer v. Heitner,* 433 U. S. 186, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977); *U.S. Industries, Inc. v. Gregg,* 540 F. 2d 142, 154 (3d Cir. 1976), *cert. denied,* 433 U. S. 908 (1977). Under this theory, although the wife could not proceed directly against her spouse, she could obtain at least partial redress by having the court sequester or attach her husband's property in the state. Such a judgment would be binding on the defendant only to the extent of his property within the forum and would not obligate him personally on the underlying claim. *Gimbel v. Gimbel,* 147 Conn. 561, 163 A. 2d 451, 453 (1960); Restatement (Second) of Judgments § 75, Comment b (Tent. Draft No. 1, 1973); *see Dackman v. Dackman,* 252 Md. at 346-47.

Thus the sole significance of the in-state property requirement imposed in *Dackman* was that in the absence of personal jurisdiction over the husband, it supplied the foundation necessary to support a further determination on the merits of the wife's claim for alimony. Absent the existence of this property and the other connecting factors

listed above, Maryland would likely have been powerless to adjudicate the controversy under the facts of *Dackman. See* Note, *Divisible Divorce in Maryland — Does It Exist?,* 30 Md. L. Rev. 63, 74 (1970).

In the instant case, however, that appellant did not own property in Maryland is immaterial in view of the fact that the circuit court had acquired *in personam* jurisdiction. As we have seen, appellant not only was served with process in Maryland, but had actually entered a voluntary appearance in the wife's proceeding through an attorney. We therefore hold that appellant's ownership of property in this state was not a jurisdictional prerequisite to appellee's suit for alimony.

We turn now to the question whether appellee had a right to recover alimony following the dissolution of the marriage by the Nevada divorce. Early on, we defined alimony as:

> "[A] maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct compels her to separate from him. It is ... a provision for her support, to continue during their joint lives, or so long as they live separate." *Wallingsford v. Wallingsford,* 6 H. & J. 485, 488 (1825); *accord, Courson v. Courson,* 213 Md. 183, 186, 129 A. 2d 917 (1957).

The long-standing rule in Maryland has been that the right to claim alimony is extinguished at the time of the severance of the marital relationship. *Upham v. Upham,* 238 Md. 261, 265, 208 A. 2d 611 (1965); *Brewster v. Brewster,* 204 Md. 501, 506-507, 105 A. 2d 232 (1954); *Johnson v. Johnson,* 199 Md. 329, 338, 86 A. 2d 520 (1952); *Staub v. Staub,* 170 Md. 202, 212, 183 A. 605 (1936); *Marshall v. Marshall,* 162 Md. 116, 122, 159 A. 260, 83 A.L.R. 1237 (1932). This doctrine finds its source in the early history of divorce and alimony in this state. Divorce was entirely unknown at common law and was purely of statutory origin in Maryland. *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033 (1913). In England limited divorces without a right of remarriage had been granted by the Ecclesiastical Courts, but there being no such courts in this state, divorce could only be granted by private act of the

Legislature. *Fornshill v. Murray,* 1 Bland 479, 482-83, 18 Am. Dec. 344 (Md. Ch. 1828); *see Crane v. Meginnis,* 1 G. & J. 463, 473-74, 19 Am. Dec. 237 (1829); *see generally* 1 J. Bishop, *Marriage, Divorce and Separation,* §§ 1424-71 (1891). The critical fact, however, is that even in England early judicial divorces were only *a mensa et thoro,* from bed and board.

It was not until the enactment of chapter 262 of the Laws of 1841, when divorce jurisdiction was conferred on the equity courts of this state, that the divorce *a vinculo matrimonii* — and the power to award alimony therein — gained recognition. Prior to 1841, it was only as an incident to the divorce *a mensa et thoro* that alimony had been awarded, first by the English Ecclesiastical Courts, and in Maryland by the equity courts after 1777.[3] *See Galwith v. Galwith,* 4 H. & McH. 477, 478 (Md. Prov. Ct. 1689) (apparently recognizing inherent authority of chancery courts to award alimony). *See also Helms v. Franciscus,* 2 Bland 544, 565, 20 Am. Dec. 402 (Md. Ch. 1830). The alimony awarded by the Ecclesiastical Courts in such cases constituted a recognition and enforcement of the husband's duty to support a wife which continued after the judicial separation. *Spain v. Spain,* 177 Iowa 249, 158 N.W. 529, 530 (1916); H. Clark, *The Law of Domestic Relations in the United States* § 14.1, at 420 (1968). Thus alimony in this state developed as "an incident of the marriage, . . . a right entirely depending upon the status of the parties. . . ." *Keerl v. Keerl,* 34 Md. 21, 25-26 (1871); *accord, Staub v. Staub,* 170 Md. at 208.

The enactment of legislation in 1841, empowering equity courts to award alimony even in cases of absolute divorce, did not alter this Court's position that the existence of a marriage relation was an indispensable prerequisite to the initial grant of alimony. It was said that despite its recognition of the judicial divorce *a vinculo matrimonii,* the Legislature had "intended to provide for alimony of the same character and

---

3. Chapter 12 of the Acts of 1777 is now codified as part of Code (1974, 1977 Cum. Supp.), Courts and Judicial Proceedings Article, § 3-603 (a) which provides in relevant part:

"The court [of equity] shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the Ecclesiastical Courts of England."

limitations as the alimony the Courts had for so long dealt with" in the context of the divorce *a mensa et thoro*. *Emerson v. Emerson,* 120 Md. at 590-91. Thus until the rendering of the *Dackman* decision in 1969, this Court adhered unswervingly to the view that the right to claim alimony could not survive a dissolution of the marriage in any case.

However valid this conception of the nature of alimony may have been at the time of the Ecclesiastical Courts, its strict application in the age of the ex parte migratory divorce is open to serious doubt. Under the Supreme Court's exposition of the Full Faith and Credit Clause of the Federal Constitution, a state is bound to give full recognition to an ex parte divorce decreed in another state having jurisdiction over the complainant. *Williams v. North Carolina* (I), 317 U. S. 287, 299, 63 S. Ct. 207, 87 L. Ed. 279 (1942). In those states, like Maryland, which treat alimony as an inseparable incident of marriage, a constitutionally binding dissolution of the marital status by a foreign court, even when effected in an ex parte proceeding, will necessarily result in the extinction of the wife's right to alimony as a matter of state law, *Brewster v. Brewster,* 204 Md. at 506; *Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A. 2d 483, 488-89 (1974); *Loeb v. Loeb,* 118 Vt. 472, 114 A. 2d 518, 526 (1955); *see Grant v. Grant,* Vt. , 383 A. 2d 627, 630 (1978), even though the Constitution does not obligate a state to give effect to that portion of a foreign ex parte judgment which purports to cut off a nonresident spouse's right to alimony or support, *Vanderbilt v. Vanderbilt,* 354 U. S. 416, 418-19, 77 S. Ct. 1360, 1 L.Ed.2d 1456 (1957); *Estin v. Estin,* 334 U. S. 541, 548-49, 68 S. Ct. 1213, 92 L. Ed. 1561 (1948). The ultimate consequence of such a rule is that the state in which the alimony claimant is domiciled — the jurisdiction having the paramount interest in her welfare — is forced to abdicate its own interest and sacrifice the wife's needs to "a metaphysical concept of the nature of alimony." H. Clark, *The Law of Domestic Relations in the United States* § 14.4, at 438 (1968). Furthermore, this "narrow, artificial, and unrealistic . . . judicial interpretation of alimony" places an estranged wife in a manifestly unfair predicament. *Johnson v. Johnson,* 202 Md. 547, 558, 97 A. 2d

330, 98 A. 2d 276 (1953) (Hammond, J., concurring). On the one hand, she may submit to the jurisdiction of a foreign court, where, as an out-of-state defendant, she is under a distinct disadvantage in seeking to recover alimony. On the other hand, she can disregard the foreign action altogether, thereby foregoing all right to alimony payments in the state of her domicile. *Id.* Putting any spouse to such a choice is palpably unconscionable.

Recognizing the great injustice wrought by the ancient doctrine and noting the failure of the Legislature to take corrective action, this Court in *Dackman* elected to depart from the traditional rule and to permit a claimant to recover alimony in those cases where her spouse had previously obtained an ex parte divorce in a foreign tribunal lacking personal jurisdiction to adjudicate the claimant's right to alimony payments. The same policy considerations which prompted our holding in *Dackman* apply with equal force to the present matter. Here, as in *Dackman,* the husband has sought to avoid responsibility for the support of his former wife by securing an ex parte divorce decree from a Nevada court which never acquired personal jurisdiction over the nonresident wife. Although the otherwise valid Nevada decree must be given effect insofar as it affects the marital status of the parties, there is absolutely no justification for permitting such a decree to endanger appellee's material well-being by terminating her support rights without any consideration having been given to the scope of her needs.

Maryland's predominant interest in safeguarding the economic security of its domiciliaries who suffer loss of financial support at the hands of an itinerant spouse, requires that aggrieved residents be afforded a remedy even where the marriage has previously been brought to an end by an out-of-state decree. The survival of the right to alimony in these circumstances has been affirmed by a clear majority of states addressing this question.[4] We think the prevailing view

4. *See, e.g.,* White v. White, 83 Ariz. 305, 320 P. 2d 702, 705 (1958); Rice v. Rice, 213 Ark. 981, 214 S.W.2d 235, 239 (1948); Hudson v. Hudson, 52 Cal. 2d 735, 344 P. 2d 295, 300-301 (1959) (Traynor, J.) Hopson v. Hopson, 221 F. 2d 839, 847 (D.C. Cir. 1955) (applying D.C. law); Sorrells v. Sorrells, 82 So. 2d 684, 686 (Fla. 1955); Pope v. Pope, 2 Ill. 2d 152, 117 N.E.2d 65, 66 (1954);

represents the more enlightened approach and therefore hold that despite the validity of the preexisting Nevada divorce and the absence of property belonging to appellant in Maryland, appellee was under the facts of this case entitled as a matter of public policy to seek an award of alimony in the courts of this state.

*Judgment affirmed; appellant to pay costs.*

King v. King, 185 Kan. 742, 347 P. 2d 381, 388 (1959); Taylor v. Taylor, 242 S.W.2d 747, 749 (Ky. 1951); Malcolm v. Malcolm, 345 Mich. 720, 76 N.W.2d 831, 834 (1956); Armstrong v. Armstrong, 162 Ohio St. 406, 123 N.E.2d 267, 269 (1954), *aff'd,* 350 U. S. 568 (1956); Seely v. Seely, 348 P. 2d 1064, 1066 (Okla. 1959); Nelson v. Nelson, 71 S. D. 342, 24 N.W.2d 327, 329 (1946); Ische v. Ische, 252 Wis. 250, 31 N.W.2d 607, 613 (1948).

A minority of courts have declined to depart from the traditional rule under any circumstances. *See, e.g.,* Summers v. Summers, 212 Ga. 614, 94 S.E.2d 725, 727 (1956); Ingersoll v. Ingersoll, 348 Mass. 209, 202 N.E.2d 820, 821 (1964); Anglin v. Anglin, 211 Miss. 405, 51 So. 2d 781, 783 (1951); Summers v. Summers, 69 Nev. 83, 241 P. 2d 1097, 1101 (1952) (dictum); Rodda v. Rodda, 185 Or. 140, 200 P. 2d 616, 624-25 (1948), *cert. denied,* 337 U. S. 946 (1949); Stambaugh v. Stambaugh, 458 Pa. 147, 329 A. 2d 483, 488 (1974); Loeb v. Loeb, 118 Vt. 472, 114 A. 2d 518, 527 (1955).